CAROLINE E. DODGE *vs.* BOSTON AND PROVIDENCE RAIL-
ROAD CORPORATION.

Suffolk. January 27, 1891. — September 2, 1891.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Railroad — Deed of Right of Way — " Family " — Limitation of Grant.*

The grandchild of the grantor of a right of way to a railroad corporation, by a
deed which provides that "the said grantor and his family shall have and enjoy
the right of free passage" in its cars over the railroad "so long as the land and
appurtenances hereinbefore described shall continue to be used" for railroad
purposes under its charter, after ceasing to be a member of such grantor's
household, is not entitled to a free pass over the railroad as one of his family.

BILL IN EQUITY, filed in this court for specific performance.
*Field,* C. J. dismissed the bill; and the plaintiff appealed to the
full court.

The case was argued at the bar in January, 1891, and after-
wards, in September following, was submitted on the briefs to
all the judges except *Holmes,* J.

*C. E. Dodge, pro se.*

*J. H. Benton, Jr.,* for the defendant.

LATHROP, J. This is a bill in equity, filed on February 23,
1888, for specific performance of an agreement alleged to have
been made by the defendant, in 1836, with John C. Dodge, the
plaintiff's grandfather. The case was heard before a single jus-
tice of this court, upon the pleadings and evidence, and comes
before us on the plaintiff's appeal from a decree dismissing
the bill.

From the evidence it appears that the defendant corporation,
on December 23, 1833, took by the right of eminent domain a
parcel of land belonging to John C. Dodge in the town of Attle-
borough, and, having constructed its road over the land so taken,
began to run trains of cars from Boston to Providence, on Au-
gust 23, 1835. By deed dated September 1, 1836, and acknowl-
edged on May 6, 1837, John C. Dodge, conveyed a right of way
over the land so taken to the defendant. After the description

of the premises conveyed, and before the habendum, were the following clauses: "It being understood and agreed by and between the said parties to this deed that the said corporation shall erect, make, and keep up all necessary fences between the lands of the grantor and the land taken for said railroad. And it is further agreed by and between the said parties to this deed, and the said corporation by the acceptance of this deed do covenant and agree to and with the said grantor, for themselves, their successors and assigns, that the said grantor and his family shall have and enjoy the right of free passage on and over said railroad in the cars of said corporation, their successors and assigns, so long as the land and appurtenances hereinbefore described shall continue to be used as a railroad, or for railroad purposes, under the charter of said corporation."

It further appears from the evidence, that in 1836 John C. Dodge had nine sons living with him; that in 1854 or 1855 he left this Commonwealth and did not return to it, and died in January, 1866; that the plaintiff's father, a son of John C. Dodge, was living with him in 1836, and continued to live with him from that time until about a year after his own marriage in 1846; that he left the Commonwealth in 1850, and returned to it in 1885 or 1886, and now resides here.

In regard to the plaintiff, the testimony shows that she was born in 1854 or 1855, in the State of Pennsylvania; that when she was a child she lived for some time in the family of her grandfather after he left this Commonwealth; and that she returned here with her father in 1885 or 1886, and has since lived with him.

The evidence was somewhat conflicting on the question whether the defendant had, by its acts, recognized the plaintiff as a person entitled to ride free over its road. It does appear that when she was a child she occasionally went over the road, when accompanied by her father or mother, and was allowed to do so; and that, since she came of age, passes had been occasionally given to her, she claiming the right to have them, but, as she states in her brief, "usually on objection by the officers of the company." On this state of the evidence, we need not consider how far the defendant would be bound by what the plaintiff contends is the practical construction put upon the deed by

the officers of the defendant corporation. We find nothing in the evidence to show conclusively that what was accorded to her after she came of age was other than as a favor.

We pass, therefore, to the consideration of the construction of the deed. The word "family" has several meanings. Its primary meaning is the collective body of persons who live in one house and under one head or management. Its secondary meaning is those who are of the same lineage, or descend from one common progenitor.

Unless the context manifests a different intention, the word "family" is usually construed in its primary sense. In *The King* v. *Darlington*, 4 T. R. 797, under the Settlement Act of 8 & 9 Wm. 3, c. 30, which provided for the granting of a certificate to a poor person who wished to remove from his own parish to another, and that the latter parish should be obliged "to receive and provide for the person mentioned in the said certificate, together with his or her family," it was held that the certificate did not extend to a grandchild of the person receiving it, who lived with his father, but not with his grandfather. Lord Kenyon, C. J. said: "In common parlance, the family consists of those who live under the same roof with the *pater familias;* those who form (if I may use the expression) his fireside. But when they branch out, and become the heads of new establishments, they cease to be part of the father's family." See also *Oystead* v. *Shed*, 13 Mass. 520 ; *Bowditch* v. *Andrew*, 8 Allen, 339 ; *Poor* v. *Humboldt Ins. Co.* 125 Mass. 274 ; *Bates* v. *Dewson*, 128 Mass. 334 ; *Bradlee* v. *Andrews*, 137 Mass. 50 ; *Phelps* v. *Phelps*, 143 Mass. 570.

The plaintiff, however, contends that the words "so long as the land and appurtenances hereinbefore described shall continue to be used as a railroad, or for railroad purposes, under the charter of said corporation," imply perpetual succession, and must necessarily include all the descendants of John C. Dodge.

But we are of opinion that these words are words of limitation of the grant, and not words extending the meaning of the word "family."

By the charter of the defendant corporation, the Commonwealth reserved the right, at any time after twenty years from the opening for use of the road, to purchase of the corporation

its railroad, and its franchise, property, and privileges. St. 1831, c. 56, § 12. The words "under the charter of said corporation" were, therefore, necessary to limit the agreement to carry to the time the corporation might have the power to use the land for railroad purposes.

So, too, the words "used as a railroad, or for railroad purposes," were a necessary and proper limitation of the contract to carry. If the location of the road were changed, and the land conveyed by Dodge should revert to him, the parties would naturally provide that the contract to carry should be at an end.

Other contingencies might also happen. By the St. of 1830, c. 81, passed on March 11, 1831, the charter of the defendant corporation could be repealed at the pleasure of the Legislature; its franchise might be forfeited for misuser or non-user, or it might be surrendered.

All these considerations show that the words in question were words of limitation, and did not extend the word "family." so as to include the descendants of John C. Dodge to the remotest generation. We are of opinion, therefore, that the plaintiff, after she ceased to be a member of her grandfather's household, was not entitled to a free pass over the road of the defendant as one of his family.          *Decree dismissing the bill affirmed.*