[No. 15934.  Department One.  July 9, 1920.]

THE STATE OF WASHINGTON, *on the Relation of W. A. Bouffleur et al., Plaintiff,* v. THE SUPERIOR COURT FOR PIERCE COUNTY, *Respondent.*[1]

SCHOOLS AND SCHOOL DISTRICTS (7-1, 8)—CHANGE OF BOUNDARIES— PETITION—"HEADS OF FAMILIES"—POWERS OF OFFICERS.  Under Rem. Code, § 4433, the county superintendent cannot transfer portions of one school district to another where it is made to appear at the hearing that the petition for the change was not signed by a majority of the heads of families residing in the territory transferred.

SAME (7-1, 8).  Rem. Code, § 4433, requiring a majority of the heads of families to sign a petition for transferring territory from one district to another, means all heads of families, regardless of whether they have children of school age or not.

Certiorari to review a judgment of the superior court for Pierce county, Fletcher, J., entered May 29, 1920, affirming a decision of the county school superintendent in changing the boundaries of a school district, after a hearing before the court.  Reversed.

*H. G. & Dix H. Rowland,* for relators.

*Hugo Metzler,* for respondent.

PARKER, J.—The relators seek review and reversal of a judgment of the superior court for Pierce county affirming a decision and order of the superintendent of public schools for that county, transferring a portion of the territory of School District No. 33 to School District No. 124 of that county.  The law under which such transfer of territory was assumed to be made by the superintendent is found in § 4433, Rem. Code, which, so far as pertinent to our present inquiry, reads as follows:

"For the purpose of transferring territory from one district to another or enlarging the boundaries of

[1] Reported in 191 Pac. 621.

any school· district, a petition in writing shall be pre-
sented to the county superintendent, signed by a ma-
jority of heads of families residing in the territory
which ·it is proposed to transfer or include, . . .
which petition shall describe the change which it is
proposed to have made.''

This is followed by provisions for the giving of
notice and for a hearing before the superintendent and
rendering of a decision by him as to whether or not
the proposed change shall be made, and the making
of an order by him accordingly. The only questions
considered by the superior court and to be here con-
sidered are: (1) Whether or not the filing of the
petition with the superintendent, signed by a ''ma-
jority of the heads of families residing in the terri-
tory,'' is jurisdictional; that is, whether or not the
superintendent is authorized to entertain the question
of such a change of territory in a given case without
the filing of such a petition with him; and (2) whether
or not the petition filed with him upon which he acted
in this controversy was signed by the required number
of such qualified persons.

As to the first question, it seems plain to us that the
superintendent is constituted a special tribunal of
limited jurisdiction for the purpose of determining the
question of whether or not the change of territory shall
be made, and that he can rightfully entertain the ques-
tion in a given case only when the question is presented
to him in the manner and after giving the notice pre-
scribed by law. Should he entertain the question of a
change in a given case upon a petition which, after
due inquiry, he finds does contain the signatures of a
majority of the ''heads of families residing in the
territory,'' an interested person thereafter seeking to
have the question of the sufficiency of such a petition
as to the required number of signatures reviewed in

the courts, after the change is fully consummated and new rights of the respective districts became vested, flowing from acts done by or on their behalf upon the faith of such change being lawfully made, it is highly probable that an estoppel would arise as against all such persons so challenging the sufficiency of the petition, since necessarily the sufficiency of the number of signatures to such petition becomes one of fact as well as law. That, however, is not this case. It is not claimed here that there is any estoppel or laches which can be invoked as against these relators. Their challenge to the sufficiency of the petition here in question was manifestly timely made. We are, therefore, of the opinion that, if it was made to appear at the hearing of this case in the superior court that the petition did not have the signatures of "a majority of the heads of families residing in the territory," the decision and order of the superintendent, and the judgment of the superior court affirming such order and decision, must be reversed.

The petition here in question was filed with the superintendent on May 17, 1919. Thereafter, due notice being given, a hearing was had before him, at which these relators and other interested persons remonstrated against the making of the proposed change. Thereafter, on August 6, 1919, the superintendent being of the opinion that the petition was signed by the required number of persons qualified to sign such petition, made his decision ordering the change of the territory substantially as prayed for by the petitioners; thereafter the matter was timely brought into the superior court, where a hearing was had and evidence adduced touching the questions above noticed, and on May 29, 1920, the superior court rendered its decision and judgment affirming the decision and order of the superintendent, wherein it found, among other things:

"That said petition filed with the county superintendent of public schools, contained the names of a majority of the residents and *heads of families* of said disputed territory, petitioned to be transferred as hereinafter described, *who had dependent upon them for support, care and education, children of school age,* . . .

"That said petition did not contain a majority of the names of *residents, heads of families of said disputed territory, who had dependent upon them other persons than children of school age,* . . ."

It is apparent from the record before us that the court affirmed the decision and order of the superintendent upon the theory that the words "heads of families," as used in the law above quoted, means only heads of families having children of school age dependent upon them, and excludes heads of families having others dependent upon them, and that, since the petition had the signatures of a majority of heads of families having children of school age dependent upon them, it was sufficient, though it did not contain the signatures of a majority of the heads of families of the territory proposed to be changed, having others dependent upon them. So the question is, do the words "heads of families," as used in the law, have the restricted meaning which is the basis of the decision of the superintendent and the trial court? Nowhere in our school statutes is to be found any definition of the words "heads of families." We must, therefore, we think, look to the primary common acceptation of the meaning of the word "family." No authority or decision has come to our notice suggesting the view that the word "family" has any such restricted meaning as has been attributed to it by the superintendent and the superior court, in the absence of a statutory definition so restricting the meaning of the word. In *Dodge*

*v. Boston & Providence R. Co.,* 154 Mass. 299, 28 N. E. 243, 13 L. R. A. 318, it is said:

"The word 'family' has several meanings. Its primary meaning is a collective body of persons who live in one house under one head or management. Its secondary meaning is those who are of the same lineage, or descend from one common progenitor. Unless the context manifests a different intention the word 'family' is usually construed in its primary sense."

Observations of similar import may be found in *Wilson v. Cochran,* 31 Tex. 677, 98 Am. Dec. 553; *Arnold v. Waltz,* 53 Ia. 706, 6 N. W. 40, and many other decisions where the meaning of the word is uncontrolled by some express words of definition to be found in the statute or document in which it may be used. 19 Cyc. 451; Bouvier's Law Dict., Rawle's Third Edition, 1186.

Counsel for respondent calls our attention to and relies upon the decision of the Minnesota court in *Oppegaard v. Board of County Commissioners,* 120 Minn. 443, 139 N. W. 949, 43 L. R. A. (N. S.) 936. We think, however, a critical reading of that decision will show that it comes nearer lending support to relators' contention here made. In that case there was involved the term "legal voters," as specifying the persons who might petition in certain cases for the enlargement of a school district. At the time in question, women had certain franchise rights in Minnesota in the determination of certain school matters, but did not have the right to vote generally upon or for other public questions or officers. The statute in question not having defined the words "legal voters," it was held that they must be taken in their ordinary and usual sense, and hence did not include women. Such, we think, is the sense in which the words "heads of families," as used in this statute, must be taken.

16—111 WASH.

We are referred to the opinion of the *Attorney General* rendered in 1891, found at page 162, Opinions of the Attorney General of that year, claimed to have been followed by the school authorities. The words "heads of families" there in question were found in the school law relating to the organization of new districts, the law reading in part:

"For the purpose of organizing a new district a petition in writing shall be made to the county superintendent, signed by at least five *heads of families,* etc." Laws of 1891, p. 246.

In response to an inquiry addressed to him by the state superintendent of public instruction as to the meaning of the words "heads of families" as used in the statute, the *Attorney General* concluded his opinion as follows:

"For the foregoing reasons, I am of the opinion that any person who is the actual head of a family, that is, who is under legal obligations to provide for the support and education of persons dependent upon him, and who is in fact providing for their education and support, is the head of a family and qualified to sign the petition mentioned in the section referred to, whether he be a legal voter or not."

It is plain that the question here presented was not there considered. There is no question here presented as to whether or not the head of a family must be a voter in order to be entitled to sign the petition; our only inquiry being as to whether or not heads of families having others dependent upon them than children of school age constitute a part of the class a majority of which must sign the petition in order to initiate proceedings looking to a change of territory from one school district to another. According to the specific finding of the superior court made in this case, there was not a majority of the heads of families, including

those having children other than those of school age dependent upon them, who signed the petition. We are not advised by this record that the school authorities of the counties have generally construed the law as is here contended for by counsel for respondent; but if such be the fact, we think such construction is so clearly erroneous that we should not adopt it.

The decision and order of the superintendent of public schools for Pierce county, which assumed to make the change of territory in question, and the judgment of the superior court affirming the same, are reversed and set aside.

HOLCOMB, C. J., MAIN, MITCHELL, and FULLERTON, JJ., concur.