WILLIAM KINGSLEY, DIRECTOR OF THE DIVISION OF TAXATION IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, APPELLANT, v. HAWTHORNE FABRICS, INC., *ET AL.*, RESPONDENTS.

Argued December 16 and 17, 1963—Decided February 17, 1964.

*Mr. Alan B. Handler,* Deputy Attorney General, argued the cause for appellant (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Leopold Frankel* argued the cause for respondents (*Messrs. Frankel & Frankel,* attorneys).

The opinion of the court was delivered by

PROCTOR, J.  Hawthorne Fabrics, Inc. (Hawthorne), a New Jersey corporation, is engaged in the business of processing, as well as jobbing, synthetic fabrics.  Isaac Brawer and Matilda Brawer, his wife, are the holders of all the capital stock of Hawthorne.  Brawer Bros. Silk Co. (Brawer), also a New Jersey corporation, is a jobber and dealer in synthetic yarns.  Irving and Louis Brawer, brothers of Isaac Brawer, are the sole stockholders of Brawer.  Neither Isaac nor Matilda Brawer has ever owned any Brawer stock, nor has Irving or Louis Brawer ever owned any stock of Hawthorne.  Neither Irving nor Louis Brawer resides with Isaac and Matilda Brawer.

Hawthorne is one of over 300 customers of Brawer and buys yarn on open account in the ordinary course of business from it under normal trade terms of 120 days.  Payment is made on the bills issued for such purchases as they mature.  On December 31, 1957 there was an unpaid indebtedness due from Hawthorne to Brawer in the amount of $228,403 for goods sold and delivered in the ordinary course of business.

Upon an audit of the 1958 Corporation Franchise Tax Return filed by Hawthorne in accordance with the requirements of the Corporation Business Tax Act (1945), *N. J. S. A.* 54:10A–1 *et seq.*, the Director of the Division of Taxation adjusted the net worth reported by Hawthorne by adding thereto the debt of $228,403 owed by Hawthorne to Brawer. A deficiency of $336.20 based on the adjusted net worth was assessed by the Director and was paid by Hawthorne, which subsequently appealed the assessment to the Division of Tax Appeals.

On that appeal Hawthorne contended that the Director had improperly interpreted the statutory provisions regarding the inclusion in net worth of an "indebtedness owing directly or indirectly" to a 10% stockholder or to "members of his immediate family." The pertinent statute is *N. J. S. A.* 54:10A–4(d), (e), which provides:

"(d) 'Net worth' shall mean the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion, and (5) the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes, as of the close of a calendar or fiscal year.  *  *  *

(e) 'Indebtedness owing directly or indirectly' shall include, without limitation thereto, all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and member of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes."

The Division of Tax Appeals concluded that Hawthorne's indebtedness to Brawer was not an "indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares" of Hawthorne, for the reason that Irving and Louis Brawer, although brothers of Isaac, were not members of his "immediate family" since they did not reside in his household. Accordingly, judgment was entered

ordering the return to Hawthorne of the additional tax paid by it as a result of the inclusion in net worth of the debt due Brawer. Thereafter, the Director moved to reopen, reconsider, modify or vacate the judgment on the grounds that the Division of Taxation had consistently interpreted the provision to apply to indebtedness owed to brothers of a 10% stockholder and that, in fact, deficit financing was being used by Hawthorne. The motion was denied by the Division of Tax Appeals.

The Director of the Division of Taxation appealed to the Appellate Division, and while the matter was pending there we certified the cause on our own motion. *R. R.* 1:10–1(a).

The question presented on this appeal is whether a brother of a 10% (or more) stockholder of a taxpayer corporation, who does not reside in the same household with the stockholder, is a member of his "immediate family" within the intendment of *N. J. S. A.* 54:10A–4(e).

The statute imposes a franchise tax upon all corporations doing business within New Jersey, measured by the "net worth" of the taxpayer corporation. In order to effect a proportionately equal tax burden on all corporations, provision was made to include in net worth all indebtedness owing directly or indirectly to a 10% stockholder or to "members of his immediate family" for the reason that in reality such loans or extensions of credit usually are contributions to capital and hence should not be treated as liabilities in calculating the net worth for the purpose of this tax. See *Werner Machine Co., Inc. v. Zink,* 6 *N. J. Super.* 188 (*App. Div.* 1950). In other words, *N. J. S. A.* 54:10A–4(e) conclusively presumes that a corporate indebtedness owing to a 10% stockholder or a member of his immediate family is equity capital. The Legislature apparently thought that loans made or credit extended by certain persons close to the stockholder should be presumed to have been made as a result of the relationship between them and the control probably exercised by the stockholder over the creditor by reason thereof. In short, the statute thwarts such manipulation or maneuvering by the

stockholder to reduce the amount of the tax. Those persons "close to the stockholder" have been limited by the Legislature to those within his "immediate family." "Immediate family" is not defined in the statute, and it therefore becomes our duty to determine the persons whom the Legislature intended by the use of that term.

In the absence of specific intent to the contrary, words in a statute are to be given their ordinary and primary meaning. *Julius Roehrs Co. v. Div. of Tax Appeals,* 16 *N. J.* 493, 497 (1954). The word "family" is an elastic term and is used to designate many relationships. See *Tepper v. Royal Arcanum,* 61 *N. J. Eq.* 638, 641 (*E. & A.* 1900); *Collins v. Northwest Casualty Co.,* 180 *Wash.* 347, 39 *P. 2d* 986, 989, 97 *A. L. R.* 1235 (*Sup. Ct.* 1935). In the leading case of *Dodge v. Boston and Providence Railroad Co.,* 154 *Mass.* 299, 28 *N. E.* 243, 244, 13 *L. R. A.* 318 (*Sup. Jud. Ct.* 1891), the court said:

"The word 'family' has several meanings. Its primary meaning is the collective body of persons who live in one house, and under one head or management. Its secondary meaning is those who are of the same lineage, or descend from one common progenitor. Unless the context manifests a different intention, the word 'family' is usually construed in its primary sense. In *King v. Darlington,* 4 *Term R.* 797, under the settlement act of 8 & 9 *Wm.* III, c. 30, which provided for the granting of a certificate to a poor person who wished to remove from his own parish to another, and that the latter parish should 'be obliged to receive and provide for the person mentioned in the certificate, together with his or her family,' it was held that the certificate did not extend to a grandchild of the person receiving it, who lived with his father, and not with his grandfather. Lord Kenyon, C. J.. said: 'In common parlance, the family consists of those who live under the same roof with the *pater-familias,*—those who form (if I may use the expression) his fireside. But when they branch out, and become the heads of new establishments, they cease to be part of the father's family.' "

The above language was quoted with approval by Vice Chancellor Bigelow in *Fratellanza Italiana v. Nugnes,* 114 *N. J. Eq.* 185, 187 (*Ch.* 1933). See also *In re Bennett's Estate,* 134 *Cal.* 320, 66 *P.* 370 (*Sup. Ct.* 1901); *Sullivan v. Wal-*

*burn,* 9 *N. J. Misc.* 280, 154 *A.* 617 *(D. Ct.* 1931) ; *Crosgrove v. Crosgrove,* 69 *Conn.* 416, 38 *A.* 219 *(Sup. Ct. Err.* 1897). These cases clearly indicate that the word "family" has two general meanings. Its primary meaning signifies a collective body of persons living together in one home, in a permanent and domestic character, under one head; in its secondary or broader meaning it includes all of those who descend from one common progenitor. And it is also clear from the cases that the word should be given its primary meaning unless the secondary meaning is clearly manifested from the context in which it is used.

In January 1959 the Director issued Regulations for the interpretation and application of the Corporation Business Tax Act in which he defined the statutory term "immediate family" as follows:

" 'Immediate family' shall include, but not be limited to, all members of the stockholder's household related to him by blood or marriage, including adopted children, and shall also include brothers and sisters of the whole or half-blood, spouse, ancestors and lineal descendants, including adopted children, whether or not they are members of the stockholder's household." Reg. 16 :10–3.140.

A substantially identical definition has apeared in the Director's Instructions to Taxpayers since 1950. The Instructions for 1947 to 1949 defined the term more narrowly, *viz.,* " 'Immediate family' shall include brothers and sisters (whole or half-blood), spouse, ancestors and lineal descendants."

█ It appears that the Director has not only adopted the secondary rather than the primary meaning of the term "family," but he has also given no effect to the modifying and limiting term "immediate" annexed to the noun by the Legislature. "Immediate," according to *Webster's New International Dictionary (2d ed.),* means:

"1. Having no intermediary or intermediation. Specif.: a. next in line or relation; directly connected, succeeding, or the like; not secondary or remote. * * *" (Emphasis added)

We are convinced that by the use of the adjective "immediate" the Legislature indicated a specific intention to restrict the meaning to be accorded "family" to its primary sense and to exclude its secondary meaning. Cases in other jurisdictions construing the term "immediate family" are consistent with our interpretation of the statute. See *Bryant v. Deseret News Pub. Co.*, 120 *Utah* 241, 233 *P. 2d* 355 (*Sup. Ct.* 1951); *Dalton v. K. of C.*, 80 *Conn.* 212, 67 *A.* 510 (*Sup. Ct. Err.* 1907); *Davin v. Davin*, 114 *App. Div.* 396, 99 *N. Y. S.* 1012 (1906); *Bays v. Mahan*, 362 *S. W. 2d* 732 (*Ky. Ct. App.* 1962); *Axelrad v. Axelrad*, 180 *Misc.* 418, 42 *N. Y. S. 2d* 394 (*Sup. Ct.* 1943).

The Director contends that in construing the statute we must give considerable weight to the contemporaneous and continued administrative interpretation of it, which he argues has been approved by the Legislature by its re-enactment of *section* 4(e) of the act without change in 1958. (*L.* 1958, *c.* 63 § 1.) While it is true that resort may be had to a contemporaneous and practical construction of a statute for whatever aid it may afford in ascertaining its true sense and meaning, *Lloyd v. Vermeulen*, 22 *N. J.* 200, 210 (1956), clearly, an administrative interpretation which is inconsistent with the language of the enactment can be of little aid in determining its meaning.

An administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows. See *Adams v. Atlantic County*, 137 *N. J. L.* 648, 652 (*E. & A.* 1948); *City of Camden v. Local Government Board*, 127 *N. J. L.* 175 (*Sup. Ct.* 1941); 1 *Davis, Administrative Law* §§ 5.05, 5.06 (1958). These principles are particularly compelling with respect to the interpretation of tax statutes. As was said in *Gould v. Gould*, 245 *U. S.* 151, 153, 38 *S. Ct.* 53, 62 *L. Ed.* 211, 213 (1917):

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their opera-

tions so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

The *Gould* case was cited with approval in *Pub. Ser. etc. Transport v. State Bd. Tax Appeals*, 115 *N. J. L.* 97, 105 (*Sup. Ct.* 1935). See also 3 *Sutherland, Statutory Construction* § 6701, *p.* 293 (1943); *cf. Harper v. N. J. Mfrs. Cas. Ins. Co.*, 1 *N. J.* 93, 100 (1948). And if the regulation attempts to add to the statute something which is not there, it can furnish no sustenance to the statute. *United States v. Calamaro*, 354 *U. S.* 351, 359, 77 *S. Ct.* 1138, 1 *L. Ed. 2d* 1394, 1399–1400 (1957); *Manhattan General Equipment Co. v. Commissioner*, 297 *U. S.* 129, 134, 56 *S. Ct.* 397, 80 *L. Ed.* 528, 531 (1936). And the fact of re-enactment adds no weight to the Director's argument here. The re-enactment rule, like the rule of contemporaneous construction, is not to be applied rigidly; it is to be used as an aid in the proper construction of the statute and not as an end in itself. Brown, "Regulations, Reenactment, and the Revenue Acts," 54 *Harv. L. Rev.* 377, 387–388 (1941). Where the regulation is inconsistent with the ordinary and primary meaning of the statutory language, it should be disregarded, despite the subsequent re-enactment of the statute, at least in the absence of a clear showing that the Legislature specifically considered the regulation and approved it in re-enacting the provision. No such showing has been made here. *Cf. Safeway Trails, Inc. v. Furman*, 41 *N. J.* 467 (1964). See also *United States v. Calamaro, supra;* 1 *Davis, op. cit. supra* § 5.07.

The Director argues that his interpretation of the term "immediate family" is consistent with the underlying policy of the statute, since deficit financing can be effected by loans from brothers as well as by loans from members of the stockholder's household. This may well be, but such reasoning would apply as well to cousins, uncles, and close friends. We agree with Justice Heher in *Pub. Ser. etc. Transport v. State Bd. Tax Appeals, supra*, at *p.* 104 of 115 *N. J. L.*, where he said, "The legislative body must express its intention to tax

in distinct and unambiguous language." If the Legislature intended that a brother not residing with the stockholder should be deemed a member of his immediate family, it could have explicitly so provided. We note that Congress in various sections of the Internal Revenue Code has defined the word "family" to include or exclude brothers, but significantly it has expressed its intention in each instance by a specific listing of the included relationships. See *e. g., 26 U. S. C. A.* § 318(a)(1); *26 U. S. C. A.* § 267(c)(4); *26 U. S. C. A.* § 544(a)(2).

Since the primary meaning of "family" is a collective body of persons living together in one home in a permanent and domestic character under one head or management, and since the adjective "immediate" in our opinion indicates a legislative intention to adopt the primary meaning of "family," the regulation of the Division is inconsistent with the intended scope of the statute and must therefore be rejected. We conclude that since neither Irving nor Louis Brawer resides in the household of Isaac and Matilda Brawer, they are not members of Isaac's immediate family within the intendment of *N. J. S. A.* 54:10A–4(e), and therefore the debt owed to the corporation which Irving and Louis own and control was improperly included in the computation of Hawthorne's net worth. In view of our conclusion, we need not consider the further point raised by Hawthorne that the statute should be construed so as not to include an indebtedness arising from an extension of credit which is usual in the industry.

The judgment of the Division of Tax Appeals is affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.