ANDREW, J. T. C.
This matter involves the application of two provisions of the New Jersey Corporation Business Tax Act (the “act”), N.J.S.A. 54:10A-1 et seq., which imposes a franchise tax on every nonexeinpt foreign and domestic corporation for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State. N.J.S.A. 54:10A-2. The tax is computed by adding together prescribed percentages of a net worth tax base and a net income tax base. N.J.S.A. 54:10A-5. Specifically, the questions presented are whether a liability owed by a corporation to its wholly-owned subsidiary is includable in the corporation’s net worth tax base, and whether 90% of the interest relating to such liability is excludable as a deduction, for purposes of computing the corporation’s entire tax base under the act, where the corporation is itself the wholly-owned subsidiary of its parent corporation, creating a grandparent-parent-subsidiary framework.
Fedders Financial Corporation, plaintiff in this matter, is the middle corporation in the three-corporation vertical structure. It is a wholly-owned subsidiary of Fedders Corporation (“Fedders”), a publicly-held corporation whose stock is traded on the New York Stock Exchange. Fedders is a major manufacturer of heating and cooling equipment and household appliances. Plaintiff was created by Fedders in order to finance the wholesale and retail commercial paper generated by the sale of air conditioners and other products manufactured by Fedders. Plaintiff was originally capitalized with $100,000 for stock and $1,900,000 for capital surplus, all of which was received from Fedders.
On March 23, 1972 plaintiff formed Fedders Capital N.V. (“Capital”), a Netherlands Antilles corporation, as a wholly-owned subsidiary. At that time plaintiff had substantial outstanding debts which it owed to various foreign and domestic lenders. Capital was formed for the purposes of borrowing and raising money for the benefit of plaintiff through sources in the *580 European Common Market. The vehicle of an off-shore subsidiary was utilized to secure financing for plaintiff in order to take advantage of federal income tax provisions which do not require the withholding of income taxes on interest paid by a foreign corporation to foreign lenders. Had plaintiff borrowed directly from foreign sources it would have had to withhold such taxes on the interest paid on the borrowing, which apparently was unacceptable to the European lenders. Capital was capitalized with $6,000,000 of stock and capital surplus received from plaintiff.
On March 28,1972 the boards of directors of both Fedders and plaintiff met and authorized Capital to issue, on or after May 3, 1972, $30,000,000 of debentures guaranteed by Fedders and convertible into Fedders Corporation stock. The Fedders board approved, among other things, the form of the preliminary offering circular for the sale of the debentures to the underwriters, the form of the indenture providing for the guarantee of the debentures by Fedders common stock and the form of the guarantee by Fedders to be endorsed on each of the debentures. The Fedders board also authorized the reservation of sufficient shares of Fedders common stock for issuance upon conversion of the debentures.
On April 18, 1972 the debentures were offered for sale by Capital in the European Common Market and sold pursuant to the terms of an offering circular prepared by Capital and Fedders. The debentures were issued under an indenture, dated May 1, 1972, between Capital, Fedders and Morgan Guaranty Trust Company of New York as trustee.
The offering circular denominated the debentures as “5 per cent Convertible Subordinated Guaranteed Debentures due 1992.” They bore interest at the rate of 5% a year and had a maturity date of May 1, 1992. The debentures were convertible into common stock of Fedders Corporation at $47.25 a share,[1] *581 subject to certain adjustments. Fedders guaranteed the payment of principal, premium, if any, and interest, although the guarantee was subordinated in right of payment to the prior payment in full of all senior indebtedness of Fedders. As stated in the offering circular, the purpose of the issue of debentures was
... to meet the needs of the operations of Fedders Financial Corporation through loans by [Capital] to it. [Capital] may also make loans to or investments in Fedders and Fedders’ other subsidiaries and affiliates. Though no specific loans or investments have yet been authorized by [Capital], it is the intention initially to loan the proceeds of this issue to Fedders Financial Corporation for the repayment of short term borrowings.
The circular described Capital as being “organized to assist the financial activities of Fedders Financial Corporation and Fedders.” Also included in the circular were a brief, one-paragraph description of Fedders Financial Corporation (plaintiff herein), and a detailed, six-page discussion of Fedders Corporation. Complete financial statements were also included.
By April 25, 1972 all of the debentures had been subscribed for. Following the sale of the debentures, Capital made loans to plaintiff as follows:
DATE INTEREST RATE AMOUNT DATE OF MATURITY
5/04/72 5% $22,500,000 5/04/87
5/04/72 5% 6.500.000 1/29/73
8/03/73 5% 9.500.000 10/31/74
11/07/73 9y2% 600,000 10/31/74
6/21/74 5% 3.200.000 5/04/87
The loans were made to enable plaintiff to discharge $15,000,-000 of Eurodollar loans, and to reduce plaintiff’s short-term United States bank obligations. The principal sources of the loans were the $30,000,000 Capital received in return for the debentures, and the $6,000,000 it received from plaintiff for capital stock and surplus. The loans were reflected in promissory notes executed by plaintiff in favor of Capital. As a result of the loans, plaintiff became indebted to Capital as follows:
*582 FISCAL YEAR AMOUNT OF ENDING INDEBTEDNESS INTEREST PAID BY PLAINTIFF ON SUCH INDEBTEDNESS
8/31/72 $29,000,000 $ 471,251
8/31/73 32,000,000 1,599,350
8/31/74 35,800,000 1,677,503
On its Corporation Business Tax Returns for its fiscal years ending August 1, 1972, August 1, 1973 and August 1, 1974, respectively, plaintiff excluded the debts owed to Capital from its net worth and, in the calculation of its net income, fully deducted the interest paid. Following an audit of plaintiff’s returns for these years, defendant Director, Division of Taxation, assessed a deficiency in taxes and interest based on the inclusion of the indebtedness in plaintiff’s net worth and the disallowance of 90% of the interest deduction.[2] Defendant determined that the indebtedness to Capital, plaintiff’s wholly-owned subsidiary, should be included in its net worth pursuant to N.J.S.A. 54:10A — 4(d)(5), which defines “net worth” to include
... the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, as of the close of a calendar or fiscal year.
Disallowance of the interest deduction was based on N.J.S.A. 54:10A-4(k)(2)(E), which provides that net income, for purposes of the Corporation Business Tax Act, shall be determined without the deduction of “90% of interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes.” “Indebtedness owing directly or indirectly” is defined to include, without limitation,
... all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes. [N.J.S.A. 54:10A — 4(e)].
*583 The assessment was imposed in accordance with defendant’s policy that all indebtedness owed by a taxpayer corporation to an affiliated corporation, which includes, without limitation, by a brother corporation to a sister corporation when both are owned by a common parent, and by a corporation to its subsidiary when both are owned directly or indirectly through corporate instrumentalities by a common parent, should be included in the taxpayer’s net worth tax base for purposes of the Corporation Business Tax.[3] This same policy led to the disallowance of 90% of the interest deduction in the calculation of plaintiff’s net income tax base. It is clear that the statutory provisions on indebtedness and interest go hand-in-hand and that a decision on the includability of the indebtedness in plaintiff’s net worth will control as to the deduction of interest.
If defendant prevails in this matter it is agreed that plaintiff’s liability shall be as follows:
*584 1972 1973 1974
Taxes due $ 79,558.32 $143,167.82 $154,637.00
Interest to 11/15/80 50,002.29 81,426.70 78,671.57
$129,560.61 $224,594.52 $233,308.57
Interest on the assessment is presently accruing.
The Corporation Business Tax Act imposes a franchise tax upon all corporations doing business in New Jersey, measured by the net worth and net income of the taxpayer corporation. In order to effect a proportionately equal tax burden on all corporations, provision was made to include in net worth all indebtedness owing directly or indirectly to a 10% or greater stockholder,
... for the reason that in reality such loans or extensions of credit usually are contributions to capital and hence should not be treated as liabilities in calculating the net worth for the purpose of this tax. See Werner Machine Co., Inc. v. Zink, 6 N.J.Super. 188 [70 A.2d 774] (App.Div.1950). In other words, [the statute] conclusively presumes that a corporate indebtedness owing to a 10% stockholder ... is equity capital. The Legislature apparently thought that loans made or credit extended by certain persons close to the stockholder should be presumed to have been made as a result of the relationship between them and the control probably exercised by the stockholder over the creditor by reason thereof. In short, the statute thwarts such manipulation or maneuvering by the stockholder to reduce the amount of the tax. [Kingsley v. Hawthorne Fabrics, Inc., supra at 525-526, 197 A.2d 673.]
The statute, however, is not limited in its reach to forms of indebtedness representing disguised capital. It has been held that salaries, bonuses and dividends due holders of 10% or more of a corporation’s stock, liabilities which apparently do not represent contributions to capital, constitute indebtedness to be included in the computation of net worth. Cliffside Dyeing Corp. v. Zink, 6 N.J.Super. 185, 70 A.2d 778 (App.Div.1950). Accruals of interest have also been deemed to constitute includable indebtedness. Werner Machine Co. v. Zink, supra, 6 N.J.Super. 188, 70 A.2d 774 (App.Div.1980). See N.J.A.C. 18:7-A.5(a).
In this case plaintiff relies primarily on the fact that includable indebtedness is limited by statute to that owing directly or indirectly to holders of 10% or more of the corporation’s stock. It is clear that the loans from Capital to plaintiff *585 which are the basis of this assessment were not directly owed to Fedders Corporation, the only holder of plaintiff’s stock. Plaintiff contends that the indebtedness was not indirectly owed to Fedders either, and that as a result it is not properly includable in plaintiff’s net worth for franchise tax purposes.[4]
The only reported case of which the court is aware that has dealt with indebtedness between related corporations is Werner Machine Co. v. Zink, supra. The pertinent facts of that case involved a debt owing from the taxpayer corporation to a sister corporation, both of which were wholly owned by the same stockholder. The court held that such indebtedness was includable in the taxpayer’s net worth. In the court’s view, the phrase “directly or indirectly,” as used in the statute, was
... intended to provide for a situation where a stockholder, otherwise coming within the statutory language, might extend credit to the corporation either personally or through an instrumentality managed or controlled by him, thus making such a loan includible in the tax base.... [Id. at 194, 70 A.2d 774, emphasis supplied].
Plaintiff acknowledges that in the Werner situation, where the creditor is the wholly-owned subsidiary of the 10% stockholder (or, as in that case, the 100% stockholder of both the taxpayer and creditor corporations), the indebtedness should be included in the taxpayer’s net worth for franchise tax purposes. In that situation, plaintiff points out, there is no other relationship between the creditor and the taxpayer except through the holder. In this case, however, there is no direct relationship between the creditor, Capital, and the holder, Fedders; the only direct relationship is between the creditor and plaintiff, the taxpayer. In this case, plaintiff maintains, the indebtedness is owed, not to an entity controlled by the holder, but to an entity controlled by the taxpayer itself. Plaintiff contends that the separate existence of the taxpayer cannot be ignored, and as a *586 result the loans cannot be attributed to Fedders, the holder of plaintiff’s stock.
I am not persuaded that the mere fact of plaintiff’s existence serves to sufficiently isolate Capital from Fedders so as to require a conclusion, as a matter of law, that the loans in question were not indirectly owed to Fedders. The test for includability of indebtedness that has been developed is one of nexus and control. Although a creditor may not be a 10% stockholder, still an indebtedness owing to such a creditor is includable in the taxpayer’s net worth if the creditor is “managed or controlled” by the individual or entity that does hold 10% or more of the taxpayer’s stock. Werner Machine Co., supra at 194, 70 A.2d 774. Such a test requires a factual analysis of the relationship between the creditor and the holder. This court must therefore determine whether Capital is in fact managed or controlled by Fedders, keeping in mind that Fedders owns none of Capital’s stock and that the corporations are two levels removed on a vertical chain of related corporations. In so doing the court is mindful of the presumption of correctness that attaches to determinations of the Division of Taxation and the burden of proof facing the taxpayer to overcome that presumption. Atlantic City Trans. Co. v. Taxation Div. Director, 12 N.J. 130, 146, 95 A.2d 895 (1953); Ridolfi v. Taxation Div. Director, 1 N.J.Tax 198, 203 (Tax Ct. 1980).
Based upon all the information in the record,[5] and the picture therein presented of the Fedders corporate organization, I find that plaintiff has not carried its burden of demonstrating that Capital is not under the management and control of Fedders Corporation. Particularly in regard to the issue of debentures that led to the loans from Capital to plaintiff, the record reveals that Fedders, not plaintiff, was the driving force behind Capital’s activities. Among the more probative considerations are the following:
*587 1. The annual reports of Fedders Corporation for the years 1972,1973 and 1974 indicate that plaintiff and Capital, as well as all other corporations in the Fedders family, existed primarily for the benefit of Fedders. The welfare of these corporations is reviewed in the reports with comparable attention (considering the size of the corporations) to that given to Fedders itself. Among the “important advances” noted in the 1972 report was the sale of the debentures by Capital enabling plaintiff to retire $15,000,000 of outstanding debt.
2. The annual reports contain consolidated financial statements of Fedders and plaintiff. The financial statements for plaintiff include the accounts of Capital. Thus, the 1972 report lists as a long-term debt of plaintiff the $30,000,000 of debentures sold by Capital. Though not conclusive, at the least this provides some insight into the manner in which Fedders viewed Capital and the extent to which it was seen as an independent corporation removed from Fedders’ control.
3. A note to the financial statements of Fedders Corporation contained in the annual reports provides that there would be no material dilution of the earnings per share of Fedders stock if the debentures issued by Capital were converted into Fedders stock.
4. The stipulation of facts submitted to the court in this matter states that the board of directors of both Fedders and plaintiff met to authorize the issue of debentures. However, the minutes of the board of directors’ meeting of plaintiff at which the issue was purportedly authorized are practically devoid of discussion of the topic. The minutes of the Fedders’ board meeting on the other hand, contain, in detail, the full range of authorizing resolutions incident to the issue of the debentures. This fact, as much as any other, indicates the control exercised by Fedders over Capital with respect to the activities leading up to the loans at issue.
5. The offering circular pursuant to which the debentures were sold was prepared by Capital and Fedders, to the exclusion of plaintiff. The 24-page circular contains only brief mention *588 of plaintiff, with financial statements, while devoting 14 pages to a review, including financial statements, of Fedders Corporation.
6. During the years in question the Fedders Corporation board of directors contained ten members.[6] The board of directors of plaintiff contained 11 members, 10 of whom were the Fedders board members. The board of directors of Capital had four members. Three of them sat on the boards of Fedders and plaintiff. These three individuals occupied the positions at Fedders of president and chairman of the board, executive vice-president and senior vice-president. The fourth member of Capital’s board of directors was the Curacao Corporation Company, N.V., the makeup of which is not disclosed. The composition of these boards certainly gives cause to question whether the same interests control all three corporations.
7. Fedders filed consolidated federal income tax returns for each of the tax years in question which reflected that Capital was a controlled foreign corporation.
While none of these factors, standing alone, would convincingly indicate Fedders’ control of Capital, taken together they lead pointedly to that fact. This is particularly so in light of the few, if any, indications in the record of the independence of Capital from Fedders’ control. All indications point to a corporate family dominated by Fedders at all levels, with all corporate activity directly toward Fedders’ economic welfare. Under these circumstances I must conclude that the presumption of correctness to which defendant’s determination is entitled has not been overcome. It has not been shown that Capital is free from the management or control of Fedders Corporation, the holder of plaintiff’s stock. It follows, therefore, for purposes of the Corporation Business Tax Act, that the loans in question may be deemed to be indirectly owed to Fedders, and plaintiff’s indebtedness is properly includable in its net worth in *589 the computation of its tax liability. In addition, 90% of the interest relating to such indebtedness may not be excluded as a deduction in the computation of its net income.
It should be emphasized that this result is not to be viewed as creating a per se rule that all corporate indebtedness to a wholly-owned subsidiary, where the corporation is itself wholly owned by its parent, is to be included in the corporation’s net worth for franchise tax purposes. As the above discussion indicates, that is a determination to be made in light of the facts of each case.
Plaintiff further contends that if the indebtedness is held to be includable in its net worth, to the extent that the indebtedness is attributable to funds contributed to Capital by plaintiff it should be excluded from net worth and the corresponding interest deduction allowed. The stipulated facts reveal that the sources of the loans consisted primarily of the $30,000,000 Capital received from the sale of the debentures and the $6,000,000 received from plaintiff for capital stock and surplus. Double taxation would result, plaintiff maintains, if the $6,000,000, already included in plaintiff’s net worth as an investment in its subsidiary, was included a second time as indebtedness owing directly or indirectly to a 10% stockholder. Defendant asserts that a similar double taxation argument that was considered and rejected by the court in R. H. Macy & Co., Inc. v. Taxation Div. Director, 77 N.J.Super. 155, 185 A.2d 682 (App.Div.1962), aff’d o. b. 41 N.J. 3, 194 A.2d 457 (1963), disposes of plaintiff’s argument here.
Based on a review of the record in this matter I find that a resolution of this issue is unnecessary. Even if the court were to agree with plaintiff as to the merits of its double taxation argument, there is no way in which relief can be afforded. This is so for two reasons. First, the record does not provide a breakdown of the monies loaned to plaintiff as to their source, i.e., how much of each loan came from the sale of debentures and how much came from plaintiff’s contributions to Capital. Thus, the portion of each loan that is potentially excludable, *590 under plaintiff’s theory, cannot be ascertained. (In 1972 the total amount loaned to plaintiff was $29,000,000; therefore in that year the possibility exists that no part of the loan derived from funds contributed to Capital by plaintiff). In addition, the stipulation of facts provides that the sources of the loans “principally consisted” of the $30,000,000 and the $6,000,000 referred to. Other sources might have existed as well, further hindering a determination as to the exact components of the loans. Thus, it cannot even be said that the amount of indebtedness in excess of $30,000,000 (in the years 1973 and 1974) is attributable to the funds contributed by plaintiff, for such excess might have come, in part, from other sources. As a result, this court would be unable to make any determination regarding the source breakdown of the loans at issue.
Based on the foregoing, judgment shall be entered affirming the final determination of defendant Director, Division of Taxation.

The closing price of Fedders common stock on the New York Stock Exchange was, on April 17, 1972, $413/4 a share.

The original assessment included a penalty assessment which was later abated. At the same time, interest was reduced to the statutory minimum.

This policy is reflected in an administrative regulation promulgated by defendant. N.J.A.C. 18:7 — 4.5(d) provides:
In the case of a creditor, corporate or otherwise (other than an individual), including an estate, trust or other entity, indebtedness, if not includible by reason of direct ownership of taxpayer’s stock by such creditor, shall be includible if both the taxpayer and the creditor are substantially owned or controlled directly or indirectly by the same interests, or where the creditor is controlled, directly or indirectly by interests, including members of the immediate family of stockholders, which in the aggregate hold ten per cent or more of the taxpayer’s outstanding shares of capital stock of all classes. For the purpose of determining the degree of stock ownership of a corporate creditor, all the shares of the taxpayer’s capital stock held by all corporations bearing the relationship of parent, subsidiary or affiliate of the corporate creditor shall be aggregated.
However, an administrative agency may not, by regulation, give a statute any greater effect than its language allows. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964). This is particularly true with respect to the interpretation of tax statutes. Ibid. This court, therefore, must ultimately determine whether defendant’s actions in this matter were authorized by the franchise tax legislation.

Plaintiffs contention that the loans were in fact “indirectly owing” to the European lenders is without merit. Our Supreme Court has determined, in circumstances essentially the same as these, that the corporate structure through which the borrowed funds were transferred may not be ignored. General Public Loan Corp. v. Taxation Div. Director, 13 N.J. 393, 400-401, 99 A.2d 796 (1953).

The record consists of a stipulation of facts, documentary exhibits, and legal briefs. A trial was deemed unnecessary by all concerned.

This fact, set forth in the stipulation of facts, is in conflict with the Fedders’ annual reports, which show nine board members.