ANDREW, J. T. C.
This matter involves the application of two provisions of the New Jersey Corporation Business Tax Act (the “act”), N.J.S.A. 54:10A — 1 et seq., which imposes a franchise tax on every nonexempt foreign and domestic corporation for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or *614 property, or maintaining an office, in this State. N.J.S.A. 54:10A — 2. The tax is computed by adding together prescribed percentages of a net worth tax base and a net income tax base. N.J.S.A. 54:10A-5, Specifically, the questions presented are:
(1) Whether a liability owed by a corporation to its sister corporation (both corporations being wholly-owned subsidiaries of a common parent) is includable in the corporation’s net worth tax base.
(2) Whether 90% of the interest relating to such liability is excludable as a deduction, for purposes of computing the corporation’s entire tax base under the Act, where both debtor and creditor corporations are wholly-owned subsidiaries of a common parent corporation.
(3) Whether the fact that at the time the indebtedness was incurred the debtor and creditor corporations were not sister corporations owned by a common parent precludes the inclusion of the indebtedness in plaintiffs net worth and permits the deduction of 100% of the interest on such indebtedness in the calculation of net income.
(4) Whether taxpayer is entitled to interest in the event that the court finds that taxpayer is entitled to a refund.
Plaintiff is and has been engaged in the steel wholesale business in Port Kearny, New Jersey for a number of years. On July 11, 1968 plaintiff entered into a financing agreement with Socomet, Inc. (Socomet), a New York corporation engaged in the metals wholesale business. At the time of this agreement Socomet was a wholly-owned subsidiary of Engelhard Minerals and Chemicals Corporation (Engelhard), a Delaware corporation. Socomet entered into this agreement for the purpose of generating purchase commissions and financing profits to itself. There was no intention on Socomet’s part (or on the part of Engelhard) of acquiring any of plaintiff’s stock. In a period of a year, beginning June 20, 1969 and ending June 18, 1970, plaintiff obtained loans from Socomet and made and delivered to Socomet four promissory notes totalling $6,400,000. Because of financial losses sustained by plaintiff and violations by plaintiff of the financing agreement, Socomet deemed itself insecure. In order to protect the financial position of Socomet with respect to plaintiff, on August 20, 1970 the Phillips Brothers Division of *615 Engelhard purchased all the stock of plaintiff which was then owned by Ira Nadler,[1] who had no relationship or interest in Engelhard.
Subsequent to August 20, 1970, Engelhard made additional loan advances to plaintiff as follows:
INDEBTEDNESS OWED BY PLAINTIFF TO ENGELHARD, AS OF THE LAST DAY OF TAX YEARS FISCAL YEAR ENDING EACH FISCAL YEAR (MARCH 31st)_
1970 (March 81, 1971) $ 5,605,981.00
1971 (March 81. 1972) 3.225.402.00
1972 (March 31, 1973) 3.889.406.00
1973 (March 81, 1974) 7.626.220.00
1974 (March 81, 1975) 30.575.125.00
1975 (March 81, 1976) 31.923.212.00
For each of the tax years in question (1971 to 1975) plaintiff filed corporation business tax returns which included in the net worth base the liabilities owned by plaintiff to Engelhard as of the last day of the fiscal year. These same returns also indicate that plaintiff excluded 90% of the interest payments to Engelhard as deductions in computing its net income base. However, for the tax years involved here, plaintiff did not include its indebtedness to Socomet in its net worth. Moreover, rather than excluding 90% of the interest payments to Socomet from its net income here, plaintiff deducted the entire amount of interest paid to Socomet.
Following an audit of plaintiff’s corporate business tax returns for the years in question, defendant Director of Taxation, in five letters, each dated March 22, 1977, assessed a deficiency based upon the manner in which plaintiff reflected its indebtedness to Socomet. The amount of indebtedness added to the net worth and the amount of interest disallowed by defendant for each of the years audited were as follows:
*616 TAX-YEARS FISCAL YEAR ENDING INDEBTEDNESS OWED BY PLAINTIFF TO SOCOMET, AS OF THE LAST DAY OF EACH FISCAL YEAR 900 OF INTEREST PAYMENTS MADE BY THE PLANTIFF TO SOCOMET ON SUCH INDEBTEDNESS tMARgfl-aU.0.
$420,827.00 1971 (March 31, 1972) $5,994,683.00
1972 (March 31, 1973) 5.994.683.00 266,518.82
1973 (March 31, 1974) 4.994.683.00 408,969.00
1974 (March 31, 1975) 4,994,683.00 367,034.39
1975 (March 31, 1976) 4,494,683.00 359,797.00
Defendant determined that the indebtedness to Socomet should be included in its net worth pursuant to N.J.S.A. 54:10A-4(d), which defines “Net worth” to include
... the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, as of the close of a calendar or fiscal year.
“Indebtedness owing directly or indirectly” is defined to include, without limitation,
... all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes. [N.J.S.A. 54:10A-4(e)]
Defendant disallowed the interest deduction based on N.J.S.A. 54:10A-4(k)(2)(E), which provides that net income, for purposes of the Corporation Business Tax Act, shall be determined without the deduction of “90% of interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all? classes.”
If defendant prevails in this matter, it was agreed that plaintiff’s liability shall be as follows:
*617 Return Year Additional Taxes Assessed Interest Total
1975 $ 3,416.10 $ -0- $ 3,416.10
1974 11,526.01 -0 11,526.01
1973 11,957.48 538.09 12,495.57
1972 10,505.74 1,732.43 12,238.17
1971 10,934.09 7,066.15 18,000.24
TOTALS $48,339.42 $9,336.67 $57,676.09
Since plaintiff has already paid $37,738.81, the balance of the assessment will be $19,937.28 plus any additional interest accruing on the outstanding taxes after October 16, 1980. The assessment was imposed in accordance with defendant’s policy that all indebtedness owed by a taxpayer corporation to an affiliated corporation, which includes, without limitation, by a brother corporation to a sister corporation when both are owned by a common parent, should be included in the taxpayer’s net worth tax base for purposes of the Corporation Business Tax.[2] This same policy led to the disallowance of 90% of the interest deduction in the calculation of plaintiff’s net income tax base. *618 It is clear that the statutory provisions on indebtedness and interest go hand-in-hand and that a decision on the includability of the indebtedness in plaintiff’s net worth will control as to the deduction of interest.
The Corporation Business Tax Act imposes a franchise tax upon all corporations doing business in New Jersey, measured by the net worth and net income of the taxpayer corporation. In order to effect a proportionately equal tax burden on all corporations, provision was made to include in net worth all indebtedness owing directly or indirectly to a 10% or greater stockholder,
... for the reason that in reality such loans or extensions of credit usually are contributions to capital and hence should not be treated as liabilities in calculating the net worth for the purpose of this tax. See Werner Machine Co., Inc. v. Zink, 6 N.J.Super. 188 [70 A.2d 774] (App.Div.1950). In other words, [the statute] conclusively presumes that a corporate indebtedness owing to a 10% stockholder.. .is equity capital. The Legislature apparently thought that loans made or credit extended by certain persons close to the stockholder should be presumed to have been made as a result of the relationship between them and the control probably exercised by the stockholder over the creditor by reason thereof. In short, the statute thwarts such manipulation or maneuvering by the stockholder to reduce the amount of the tax. [Kingsley v. Hawthorne Fabrics, Inc., supra, at 525-526, 197 A.2d 673]
The statute, however, is not limited in its reach to forms of indebtedness representing disguised capital. It has been held that salaries, bonuses and dividends due holders of 10% or more of a corporation’s stock, liabilities which apparently do not represent contributions to capital, constitute indebtedness to be included in the computation of net worth. Cliffside Dyeing Corp. v. Zink, 6 N.J.Super. 185, 70 A.2d 778 (App.Div.1950). Accruals of interest have also been deemed to constitute includable indebtedness. Werner Machine Co., Inc. v. Zink, 6 N.J.Super. 188, 70 A.2d 774 (App.Div.1950). See N.J.A.C. 18:7-4.5(a).
In the present case plaintiff relies on the fact that includable indebtedness is limited by statute to that owing directly or indirectly to holders of 10% or more of the taxpayer’s capital stock. It is clear that the loans from Socomet to plaintiff which are the basis of this assessment were not directly owed to Engelhard, the only holder of plaintiff’s stock. Plaintiff contends that the indebtedness was not indirectly owed to Engel *619 hard either, and that as a result it is not properly includable in plaintiff’s net worth.
The only reported case of which the court is aware that has dealt with indebtedness between related corporations is Werner Machine Co. v. Zink, supra. The pertinent facts of that case involved a debt owing from the taxpayer corporation to a sister corporation, both of which were wholly owned by the same stockholder. The court held that such indebtedness was includable in the taxpayer’s net worth. In the court’s view, the phrase “directly or indirectly”, as used in the statute, was
... intended to provide for a situation where a stockholder, otherwise coming within the statutory language, might extend credit to the corporation either personally or through an instrumentality managed or controlled by him, thus making such a loan includible in the tax base.... [at 194, 70 A.2d 774; emphasis supplied].
The test for includability of indebtedness is, thus, one of nexus and control. Although a creditor may not be a 10% stockholder, still an indebtedness owing to such a creditor is includable in the taxpayer’s net worth if the creditor is “managed or controlled” by the individual or entity that does hold 10% or more of the taxpayer’s stock. Ibid. I am satisfied that the principles enunciated in Werner are sufficiently broad enough to require this court to find that the indebtedness owed to Socomet by plaintiff must be considered to be indirectly owed by a debtor corporation to its stockholder.
However, this determination is not dispositive of the entire matter. Plaintiff urges that because the indebtedness occurred prior to the affiliation of plaintiff and Socomet, this court must find the statutory provisions to be inapplicable. To support its contention, plaintiff points to the intent and the policy of the taxing statute which was “to thwart. . . manipulation or maneuvering by the stockholder to reduce the amount of the [franchise] tax.” Kingsley v. Hawthorne Fabrics, Inc., supra at 526, 197 A.2d 673. This statutory policy, the argument proceeds, cannot be violated when at the time of the loan the debtor and creditor corporations were not related nor was a relationship other than debtor-creditor even contemplated.
*620 I am not persuaded by the contention that the relationship between plaintiff and Socomet, when the indebtedness was incurred, should control as to the applicability of the statute. Plaintiff’s argument misperceives the nature and operation of the Corporation Business Tax Act. The franchise tax is a tax for the privilege of the franchise itself. The value of the privilege is ascertained by reference to the financial status of the taxpayer at the end of the taxable period. N.J.S.A. 54:10A-4(d)(5). It is the financial status of the taxpayer on the last day of a taxable period which establishes the tax bases upon which the Corporation Business Tax is imposed. United States Steel Corp. v. Taxation Div. Director, 38 N.J. 533, 540-541, 186 A.2d 266 (1962); 84 C.J.S., Taxation, § 134 at 261. Consequently, since plaintiff was indebted to Socomet on each of the last days of the taxable periods in question, N.J.S.A. 54:10A-4(d)(5), 4(e) and 4(k)(2)(E) require that such indebtedness be included in the tax base.
This conclusion does not ignore the original purpose of the statutory “indebtedness” provisions. Although the initiating cause or purpose of legislation may be an aid in statutory interpretation, it does not thereby limit the applicability of that legislation solely to the facts which constituted that cause. Eastern Air Lines v. Civil Aeronautics Bd., 354 F.2d 507 (D.C.Cir.1965); see, also, Cliffside Dyeing Corp. v. Zink, supra (salaries, bonuses and dividends due holders of 10% or more of a corporation’s stock, liabilities which apparently do not represent contributions to capital, constitute indebtedness to be included in the computation of net worth); Werner Machine Co., Inc. v. Zink, supra (accruals of interest have also been deemed to constitute includable indebtedness). There is nothing in the statutory provisions which evidences an intent to limit its application to the factual situation presented by the initiating cause of the legislation.
Aside from the point that legislation is not to be limited to its original purpose when the language used is more comprehensive in scope, is the fact, as defendant clearly points out, that as a practical matter, there was a potential for maneuvering on *621 plaintiff’s part once Engelhard acquired plaintiff’s stock. The indebtedness of plaintiff could have been easily converted into equity capital. Moreover, in a normal debtor-creditor situation, a creditor is free to collect its indebtedness when due. In a sister corporation situation, such as exists here, the collection of the indebtedness could be inhibited by a financial concern for the debtor by the parent corporation. There is, thus, opportunity for manipulation or maneuvering.
Plaintiff’s urgings also ignore the language of Kingsley v. Hawthorne Fabrics, Inc., supra, which indicated that N.J.S.A. 54:10A-^4(e) conclusively presumed that a corporate indebtedness owing to a 10% stockholder is equity capital. Id. at 525, 197 A.2d 673. If the presumption is irrebuttable, taxpayer’s motive in incurring the indebtedness, however bona fide, is of no moment.
In summary, I find, therefore, that for purposes of the Corporation Business Tax Act the indebtedness in question was owed indirectly to Engelhard and such indebtedness was properly includable in plaintiff’s net worth in the computation of its tax liability. In addition, 90% of the interest relating to such indebtedness may not be excluded as a deduction in the computation of its net income. I reach these conclusions notwithstanding the fact that the indebtedness originated prior to the time that plaintiff and Socomet became affiliates.
Having decided for defendant renders it unnecessary to address the question of taxpayer’s entitlement to interest.
Based on the foregoing, judgment shall be entered by the Clerk of the Tax Court affirming the final determination of defendant Director, Division of Taxation.

The record indicates that all of the stock of plaintiff was owned by Ira Nadler or donees of Ira Nadler pursuant to gifts made shortly before and in contemplation of the sale of such stock to Engelhard.

This policy is reflected in an administrative regulation promulgated by defendant. N.J.A.C. 18:7-4.5(d) provides:
In the case of a creditor, corporate or otherwise (other than an individual), including an estate, trust or other entity, indebtedness, if not includible by reason of direct ownership of taxpayer’s stock by such creditor, shall be includible if both the taxpayer and the creditor are substantially owned or controlled directly or indirectly by the same interests, or where the creditor is controlled, directly or indirectly by interests, including members of the immediate family of stockholders, which in the aggregate hold ten per cent or more of the taxpayer’s outstanding shares of capital stock of all classes. For the purpose of determining the degree of stock ownership of a corporate creditor, all the shares of the taxpayer’s capital stock held by all corporations bearing the relationship of parent, subsidiary or affiliate of the corporate creditor shall be aggregated.
However, an administrative agency may not, by regulation, give a statute any greater effect than its language allows. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964). This is particularly true with respect to the interpretation of tax statutes. Ibid. This court, therefore, must ultimately determine whether defendant’s actions in this matter were authorized by the franchise tax legislation.