ACQUACKANONK WATER COMPANY ET AL., PROSECUTORS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, DEFENDANTS.

Argued May 31, 1922—Decided July 15, 1922.

1. A company incorporated under the General Corporation act, whose business is the supplying of water at wholesale to local water companies, which in turn supply water to inhabitants of several municipalities, is a public utility within the meaning of section 15 of the act concerning public utilities (*Pamph. L.* 1911, *p.* 374), and it is immaterial whether such company is incorporated under the General Corporation act, or whether it sells water at wholesale, or directly to municipalities.

2. Under section 28 of the statute of 1918, amending the Public Utilities act (*Pamph. L., p.* 305), which provides for the reviewing of an order of the board of public utilities commissioners by the Supreme Court, by writ of *certiorari,* and vesting that court with power to set aside an order of the board, *certiorari* is the proper method to review such order, although the setting aside of the order may not afford the prosecutor complete relief.

On *certiorari.*

For the companies, *William M. Wherry* and *L. Edward Herrmann.*

For Bayonne, Bloomfield, Harrison, Jersey City, Kearney, Montclair and Nutley, *John J. Treacy.*

For Passaic, *John J. Treacy, George L. Record* and *Albert O. Miller.*

For Paterson, *Edward F. Merrey.*

The opinion of the court was delivered by

SWAYZE, J.    I copy the statement of facts as follows from the decision of the public utilities commission. There follows the view of the board as to the law, and last my view.

"This matter is before the board on a joint petition filed by the Acquackanonk Water Company, East Jersey Water Company, Kearney Water Company, Montclair Water Company and Passaic Water Company for an increase in rates. As all five companies jointly own certain of the property used in common in supplying eighteen municipalities, including Bayonne, Paterson, Montclair, Passaic and Bloomfield, all five companies are treated as a single entity in the petition.

"The Montclair Water Company and the Kearney Water Company were incorporated under the act of 1876, entitled 'An act for the construction, maintenance and operation of water works for the purpose of supplying cities, towns and villages of this state with water,' commonly called the Water Companies act, to supply Montclair and Kearney respectively, and other towns, villages and cities that it may be lawful for it to supply. The Acquackanonk Water Company was incorporated under a special statute of the legislature, passed in 1867, as a water company to supply the village of Passaic. The Passaic Water Company was incorporated under a special statute of the legislature passed in 1853 as a water company to supply the town of Paterson and the village of Manchester. The East Jersey Water Company is incorporated under the General Corporation law.

"These companies own and operate a water works system. The Passaic, Montclair and Acquackanonk Water companies distribute and sell water, retail and wholesale, for public and private use in various municipalities. The Kearney Water Company, although incorporated to supply the town of Kearney, merely transports water. The East Jersey Water

Company distributes water, at wholesale only, to municipalities or to certain distributing companies and these companies in turn distribute, it for public or private use. The East Jersey Water Company was originally organized for the purpose of entering into a contract with the city of Newark, as a contractor to gather together the lands and to build a water supply system for the city of Newark. Subsequently the East Jersey Water Company acquired an interest in other water companies and engaged in selling water to them at wholesale for distribution by those companies to the municipalities they were under contract to serve, and later, in some instances, acquired those contracts from the other companies.

"The East Jersey Water Company has never carried on a water company business except to contract to serve other water companies by wholesale, which in turn serve the municipalities, or to supply a municipality which owns its own distributing system.

"The East Jersey Water Company now supplies the city of Bayonne by selling water to the New York and New Jersey Water Company, which in turn delivers the water to the distributing plant operated by the city of Bayonne.

"The town of Kearney is now supplied by New Jersey Suburban Water Company and the New York and New Jersey Water Company, which companies took over the contract made between Kearney and the East Jersey Water Company, but these companies buy water from the East Jersey Water Company. Both the cities of Jersey City and Bayonne have contracts for emergency supply with the New York and New Jersey Water Company, which in turn has a contract to cover such service with the East Jersey Water Company.

"It will be observed, therefore, that the business of the East Jersey Water Company is confined to selling water, under contract by wholesale, to other companies or municipalities, which in turn distribute and sell to the public. In no case does the East Jersey Water Company contract to sell and distribute directly to the public.

"The jurisdiction of the board to regulate the rates of the East Jersey Water Company is challenged by the municipalities on two grounds:

"1. That the East Jersey Water Company is not a utility within the meaning of the statute.

"2. That the board has no power to affect the rates of the East Jersey Water Company because the rates are all regulated by contract, and the board is without jurisdiction to disregard these contracts.

"The jurisdiction of the board is limited by the provisions of the statute. Section 15 of the act entitled 'An act concerning utilities,' &c. (*Pamph. L.* 1911, *p.* 374), and the amendments and supplements thereof, defines the board's jurisdiction as follows:

" 'The board shall have general supervision and regulation of, jurisdiction and control over, all public utilities, and also over their property, property rights, equipment facilities and franchises so far as may be necessary for the purpose of carrying out the provision of this act. The term 'public utility' is hereby defined to include every individual, co-partnership, association, corporation * * * that now or hereafter may own, operate, manage or control within the State of New Jersey any * * * water * * * system, plant or equipment for public use, under privileges granted or hereafter to be granted by the State of New Jersey or by any political subdivision thereof.'

"Under the provisions of the statute the ownership, management, operation or control of a water plant, system or equipment must be for public use, and such public use must be under privileges granted by the state or a political subdivision thereof.

"The East Jersey Water Company unquestionably owns and controls a water supply system and its equipment, jointly with the other water companies; but is the ownership, management, operation and control for 'public use' within the meaning of the act?

"Such ownership, maintenance or control of a water system under the statute must be for public use under privileges granted by the state or its political subdivisions."

I agree with the board of public utility commissioners that the East Jersey Water Company owns and controls a water supply system and its equipment jointly with the other water compaines. Where I differ from them is in thinking that the ownership, management, operation and control are for public use, within the meaning of the act. I do not think the answer to this question depends upon the fact that the East Jersey Water Company was incorporated under the General Corporation act. It depends on whether, as the situation now is, with the various complications and ramifications, the East Jersey Water Company is engaged in the business of supplying water for the municipalities with which it has relations. It does not make any difference in my mind that it sells water at wholesale. Its connections with the local water companies are such that virtually it supplies the inhabitants of several, perhaps of all the municipalities by virtue of the rights of the local water companies. At any rate in order that the rates for water to the individual citizens may be properly regulated it is essential that the plan should be dealt with as a whole, and it may be necessary in form to deal with each company, for obviously if the rate for water supplied by the East Jersey Water Company could not be regulated, the East Jersey Water Company might charge one of its customers more and others less and might make up the loss on a low rate from a local company by imposing a high rate for the wholesale delivery. This, I think, could not have been the intent of the legislature. The cases cited on behalf of the East Jersey Water Company support my view; the case is quite similar in some of its aspects to the case of the Hackensack Water Company, which was recently before me.

As to the East Jersey Water Company having privileges from the state or municipalities, I think it enough to say that it has the privilege of being a corporation from the state, which is enough to authorize special treatment for

purposes of taxation, and it has the privilege of doing business in the various municipalities and distributing water therein.

The only question I have had has been the propriety of the remedy by *certiorari*. Obviously what the prosecutors of the writ desire is an order of the board allowing them to file their schedule and this is not done by a judgment in *certiorari*, which can only set aside the present order but cannot lead to the order affording relief, which the prosecutor desires. This, however, I think, does not make the writ inapplicable, and the statute as amended (*Pamph. L.* 1918, *p.* 305, § 38), expressly enacts that any order hereafter made by the board may be reviewed upon *certiorari* by the Supreme Court where the legislature explicitly gives this jurisdiction; the prosecutor asks for the writ of *certiorari*, be its effect what it may.

I think all other questions must stand aside and the statutory scheme must be pursued. I therefore will sign an order for judgment for the prosecutor.