EAST JERSEY WATER COMPANY, APPELLANT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

Argued November 22, 1922—Decided February 2, 1923.

The East Jersey Water Company, although chartered under the General Corporation act, and although not vested with the power of eminent domain, owns, operates, manages and controls a water system for public use under privileges granted by the state. It is therefore a "public utility" within the meaning of section 15 of the Public Utility act (*Pamph. L.* 1911, *p.* 374), and subject to the supervision and regulation of the board of public utility commissioners with relation to the rates to be charged by it for water supplied by it to its customers.

On appeal from the Supreme Court, whose opinion is reported in 97 *N. J. L.* 366.

For the appellant, *Thomas Brown* and *Treacy & Milton.*

For the respondents, *L. Edward Herrmann, John B. Humphreys* and *William W. Wherry, Jr.* (of the New York bar).

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The appellants seek the reversal of a judgment of the Supreme Court setting aside an order of the board of public utility commissioners refusing to consider an application of the East Jersey Water Company for its approval of rates proposed to be charged by the

latter for water supplied to its customers. The ground of such refusal was that the board had no jurisdiction over the matter of the rates charged by that company. The Supreme Court on review held that the finding of the board that it lacked jurisdiction was erroneous, and set aside its order for that reason.

The East Jersey Water Company was incorporated on August 1st, 1889, under our General Corporation act as it then existed. The objects for which it was formed, as recited in its articles of incorporation, were "the storage, sale and delivery of water, and the construction and maintenance of the necessary reservoirs, pipe lines and other works therefor, and the acquisition of the necessary and appropriate property, real and personal." It is admitted that, in the exercise of the powers which this company has assumed it possesses under its articles of incorporation, it abstracts water in very large quantities from fresh-water streams in the northern part of our state; that it sells this water so abstracted to various municipalities within the state at wholesale, and that these municipalities appropriate the water thus delivered to their own public uses and to the use of their inhabitants.

The question whether, under these facts, the East Jersey Water Company comes within the supervision and control of the board of public utility commissioners, depends upon the true construction of section 15 of the act creating that board and defining its powers. This statute was passed in 1911. *Pamph. L.* 1911, *p.* 374. The section referred to declares that "the board shall have general supervision and regulation of, jurisdiction and control over, all public utilities, and also over their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this act." One of these provisions is the right to fix just and reasonable rates to be charged by a public utility for service rendered. The section defines the term "public utility" as including "every individual, co-partnership, association or corporation * * * that now or hereafter may own, operate, manage or control,

within the State of New Jersey, any water * * * system, plant or equipment for public use, under privileges granted, or hereafter to be granted, by the State of New Jersey or any political subdivision thereof."

The fundamental matter presented for solution, therefore, is whether the East Jersey Water Company comes within the legislative definition of a "public utility" just recited. It will be observed that the statute requires the existence of two conditions in order to bring a water company within the jurisdiction of the public utilities board—(1) that it owns, operates, manages or controls a water system for public use, and (2) that it does this under privileges granted by the state.

That this company operates its water system for public use we have no doubt. The control of the fresh-water streams within our boundaries resides in the state in its sovereign capacity as representative of, and for the benefit of, the people in common; and the legislature may, as it sees fit, permit or prohibit the abstraction of such water, except to the extent that it is appropriated to riparian uses. *Attorney-General* v. *Hudson County Water Co.,* 70 *N. J. Eq.* 695. Our legislature, in the exercise of this sovereign power, has passed statutes for the conservation of the water supply of the state, in order that the rights of our people therein may be properly protected. In view of the existence of this power, it was held by the Supreme Court in the case of *East Jersey Water Co.* v. *Board of Conservation and Development,* 91 *N. J. L.* 448, that the company was subject to the provision of section 8 of our Water Conservation act of 1907 (*Pamph. L., p.* 633), which imposes a tax upon every corporation diverting the waters of our streams or lakes for the purpose of a *public* water supply. See, also, *State* v. *City of Trenton,* 97 *N. J. L.* 241.

The theory of the appellants seems to be that, because this company has not been vested with the power of eminent domain, and because, under its charter, it is under no obligation to supply the water diverted by it to the public or any

portion thereof, it is a mere private corporation, operating a water system in which the public has no interest. But this contention is unsound. In the leading case of *Munn* v. *Illinois,* 94 *U. S.* 113, the question for determination was whether warehouses located in Chicago, in which grain shipped from the far western states was stored, there to await transit to the Atlantic seaboard and other eastern points, were devoted to a public use, and, for this reason, were subject to state regulation. The court laid down this principle as constituting the test to be applied, viz.: "Property becomes clothed with a public interest when used in a manner to make it of public consequence and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he in effect grants to the jublic an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created." Applying this principle, it was held that these warehouses, although erected by individuals or companies for their own private purposes, were devoted to a use in which the public had an interest, and for this reason were subject to state regulation. A case in our own state similar in principle is that of *Attorney-General* v. *Firemen's Insurance Co.,* 74 *N. J. Eq.* 372, in which this court held that associated insurance companies operating in what was called the Newark district, were subject to state regulation with relation to the rates to be charged to persons seeking insurance, for the reason that they were conducting a business in which the public, as such, had an interest; and that this interest existed, notwithstanding the fact that the companies affected by the decision were under no obligation to insure all or any particular part of the property of the people within the limits of the district.

We conclude, therefore, that the East Jersey Water Company is operating a water system for public use, within the meaning of section 15 of our Public Utilities act.

The second question to be determined is whether the company's water system is operated "under privileges granted by

the State of New Jersey." As has already been stated, this company was incorporated under the General Corporation act. That act was passed in 1875. By an amendment passed in the following year (*Pamph. L.* 1876, *p.* 103), the rights and powers of corporations organized thereunder were extended so as to include "the damming of rivers and streams, including the storage, transportation and sale of water and water power and privileges." This was the state of the statutory law at the time that the company was incorporated, in 1889, so that it would seem that there was vested in the company at the time of its organization the right, declared in its charter, to store, sell and deliver water, and, by implication, to dam rivers and streams for the purpose of acquiring such water. We so intimated in our opinion in *Attorney-General v. Hudson County Water Co., supra*, after a discussion of these statutory provisions, declaring that, in view thereof, we were justified in assuming (although the matter was not directly involved in the case then before us for determination) "that the East Jersey Water Company is endowed with corporate power to dam rivers and streams and to store, transport and sell water," subject to certain limitations not material to the matter now being considered.

We have not overlooked the fact that in the revision of the General Corporation act of 1896 (*Pamph. L., p.* 277) the power of damming rivers and streams and of storing and selling water are eliminated, and that the act of 1875 and its supplements, so far as not embodied in the revision, are repealed. But the repealer contains an express provision that "no existing corporation shall be thereby dissolved, nor shall the powers specified by its charter or certificate of incorporation be thereby impaired or limited, and vested rights acquired under the repealed acts, and actually exercised and enjoyed, shall not be divested or disturbed." We are inclined to consider, therefore, that this corporation is operating its water system under privileges expressly granted to it by the state.

But even if the grant contained in the statutory provisions, to which reference has been made, is not sufficient to confer upon the East Jersey Water Company the privilege of operating its water system in the way which has been recited, we think the existence of such a privilege is to be implied from the facts which have already been set out. The company has asserted the right to carry on this business under the authority of the statute for more than a quarter of a century, and the state during all of that time has acquiesced in the use of its waters by this company for the purposes to which they are devoted, and has dealt with the corporation on the basis of the legality of its acts. Certainly, in this situation, the corporation cannot, nor can any agency of the state, unless duly authorized to do so, be heard to dispute the existence of the privileges actually enjoyed by the corporation under the implied permission of the state itself, and so relieve the corporation from its obligation to observe those rules and regulations which the state itself has provided for the purpose of controlling the business of "utility" corporations to such an extent and in such a way as to best protect the interests of those of the public for whose benefit it is carried on.

The judgment under review will be affirmed.

*For affirmance* — The Chancellor, Chief Justice, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Katzenbach, Williams, Gardner, Van Buskirk, JJ.   12.

*For reversal*—None.