SMALL, P.J.T.C.
Plaintiff, Delmarva Power and Light Company (“Delmarva”), argues that, because of the way in which provisions of the New Jersey Corporation Business Tax Act (the “CBT Act”), N.J.S.A. 54.10A-1 to -40, and the New Jersey Franchise and Gross Receipts Tax Act (the “F & GRT Act”), N.J.S.A. 54:30A-16 to -67 (repealed by L. 1997, c. 162, § 77, effective Jan. 1, 1998), were worded for the years 1994 to 1997, it (Delmarva) was not liable for either tax in those years. The parties agree that, for the years under appeal: (1) Delmarva was not subject to both taxes; (2) Delmarva had no liability under the F & GRT Act because it had no receipts from retail sales in New Jersey in those years; and (3) Delmarva was subject to tax under the CBT Act unless it was either specifically exempt from that tax under N.J.S.A. 54:10A-3(f) or was constitutionally protected from being taxed. The exemption from the CBT in N.J.S.A. 54:10A~3(f) applied, for the years 1994 to 1997, to “[c]orporations subject to a tax under the provisions of P.L. 1940, c. 4 (C. 54:30A-16 et. seq.), P.L. 1940, c. 5 (C. 54:30A-49 et seq.), or P.L. 1991, c. 184 (C. 54:30A-18.6 et al.) or any statute or law imposing a similar tax or taxes.” N.J.S.A. 54:10A-3(f).
For the 1994, 1995, 1996 and 1997 tax years, Delmarva filed CBT returns, and paid taxes in the amounts of $348,271, $303,609, $186,424 and $303,531, respectively. After significant changes in the taxation of New Jersey public utilities were made effective for tax years 1998 and following (see Section III. A. infra, this op. p. *192 196), Delmarva filed amended returns seeking refunds of all CBT paid for the tax years in question. Those refund requests were denied by the Director and these appeals followed.
Delmarva contends that it is subject to the F & GRT by virtue of the nature of its business activities. However, because it had no retail sales in New Jersey, its calculated F & GRT liability was zero. Delmarva argues that it was exempt from the CBT because it was “subject to” F & GRT tax, even though it was not liable for any F & GRT. Additionally, Delmarva argues that subjecting it to the CBT would violate the Commerce Clause of the United States Constitution and equal protection clauses of the New Jersey and United States Constitutions.
Delmarva has filed a motion for summary judgment and the Director, Division of Taxation (the “Director”) has filed a cross-motion for summary judgment. For the reasons explained below, I find that, because Delmarva had no F & GRT liability from 1994 to 1997, it was not subject to that tax and therefore was not statutorily exempt from the CBT in those years. I find Delmarva’s constitutional arguments unpersuasive. The Director’s motion for summary judgment is granted.
I.

Delmarva’s Business in New Jersey

Delmarva was first authorized to do business in the State of New Jersey in 1969. Delmarva’s business receipts in New Jersey derived from wholesale sales of electricity to New Jersey public utilities. For the years in question, Delmarva owned tangible property in New Jersey which it valued at between $150 million and almost $170 million (see Table 1 below for details). Delmarva provided and delivered electric service to customers located on the Delmarva Peninsula and also sold electricity off-system in markets that were not subject to price regulation. Delmarva was subject to regulation with respect to its electricity sales in Delaware, Maryland, and Virginia. Since it did not make retail sales in New Jersey, it was not subject to regulation by the New Jersey regulatory authorities. Its sales of electricity in New Jersey were *193 to New Jersey regulated utilities, which sold the electricity to New Jersey retail customers. During the tax years in issue, 77% to 90% of Delmarva’s earnings were from the sale of electricity at either wholesale (i.e. for resale) or retail (to final consumers). There is no assertion that Delmarva was not subject to and did not pay taxes in the states other than New Jersey where it did business.
The quantitative and relative scope of Delmarva’s business activities in and outside of New Jersey is summarized in Table 1 below.
TABLE 1
Delmarva’s Property, Sales, and Payroll as reported by Delmarva on its New Jersey CBT returns
1994 1995 1996 1997
Value of Property In New Jersey $167,930,421 $169,897,182 $166,148,359 $151,408,951
Value of Property Everywhere 2,139,193,309 2,228,958,852 2,306,092,443 2,279,128,147
% of Property In NJ 7.8% 7.6% 7.2% 6.6%
Receipts from New Jersey Sales $ 143,399 $ 306,380 $ 7,143 $27,395,399
Total Receipts 989,467,770 1,001,883,461 1,110,485,370 1,317,898,567
% of Sales in NJ .01% .03% nil 2.07%
New Jersey Payroll 0 0 0 0
Worldwide Payroll $148,390,423 $142,546,694 $145,410,962 $159,751,600
CBT Taxes Paid & Claimed as a Refund $ 348,271 $ 303,609 $ 186,424 $ 303,531
CBT as a % of the Value of Property in New Jersey 1.256% 1.787% 1.112% 2.005%
CBT as a % of Sales in New Jersey 147% 99% 2,609% 1.108%
CBT as a % of World Wide Sales [1] 0.035% 0.030% 0.017% 0.023%
*194 CBT Allocation Factor Under N.J.S.A. 54:10A~6 Per Delmarva’s Tax Returns [2] 2.6% 2.6% 2.4% 2.7%
Delmarva had nuclear generation capacity in New Jersey that was provided by the Salem Nuclear Generation Station, a facility located in Creek Township, New Jersey and owned by Delmarva and New Jersey public utilities as tenants in common. Public Service Electric and Gas Company (PSE & G), a New Jersey public utility, operated the facility, and received periodic payments for its operating activities from Delmarva and the other utOities. The Nuclear Regulatory Commission (NRC) regulated the operation of the Salem facility. The facility, and the Peach Bottom (PA) and Forked River (NJ) Nuclear Generating Stations were connected by the Lower Delaware Valley Transmission System (LDV). The LDV included the following elements: (a) the Kee-ney conductor, which consisted of a steel and aluminum tower transmission line and right-of-way; (b) the Salem conductor, with a right-of-way extending from the Salem Switching station to the *195 New Freedom Substation; and (c) the Salem Switching station which was a terminal facility in which Plaintiff had a 7.45% ownership interest. The Salem conductor and switching station both intersected with and extended over public streets, highways and roads located in New Jersey. Pursuant to an application by PSE & G, the New Jersey Board of Public Utility Commissioners (NJBPUC) approved the sale of the LDV to several entities, including Delmaiva. Delmaiva owned a 1% undivided interest in the equipment and property in New Jersey, and was entitled to 7.41% of the output of the Salem facility.
While Delmaiva was regulated by the Federal Energy Regulatory Commission (FERC), it had not applied for designation by the NJBPUC as a public utility in New Jersey. From 1994 to 1997, Delmaiva did not have a retail seivice area in New Jersey. However, Delmaiva did make wholesale sales of electricity to New Jersey public utilities through the Pennsylvania-New Jersey-Maryland Interconnection Association (the “PJM Power Pool”). The PJM Power Pool consisted of seven utilities in Pennsylvania, New Jersey, and Maryland. The PJM Power Pool operated under the PJM Interconnection Agreement which permitted its members to share reserve requirements on a group basis in order to improve the reliability and operating economies of the systems in the group. Delmaiva’s generation and transmission facilities were owned and operated on an integrated basis with those of the seven utilities in the Pool. Moreover, expenses and losses from the LDV were allocated to all PJM Power Pool members.
II.

The Parties’ Contentions

Delmaiva argues that it is subject to the F & GRT because it is an electric public utility pursuant to N.J.S.A. 54:30A-49 through - 68 and exempt from the CBT pursuant to N.J.S.A. 54:10A-3(f). Delmarva argues that the Director has constructed an unduly narrow interpretation of the F & GRT not intended by the Legislature which violates the internal consistency doctrine of the Commerce Clause of the Federal Constitution. U.S. Const. art. *196 I, § 8, cl. 3. Finally, Delmarva argues that the Director’s statutory interpretation violates the Equal Protection Clause of the Due Process Clause of both the Federal and New Jersey constitutions. U.S. Const. amend. XIV, § 1; N.J. Const. art. I, ¶ 1.
The Director argues that Delmarva’s CBT refund claims were properly denied and that Delmarva was not required or permitted to file F & GRT returns for the taxable periods in question. In support of this contention, the Director argues that only specifically enumerated corporations are exempt from the CBT and this exemption must be narrowly construed. Therefore, the comprehensive requirements on taxpayers for F & GRT subjectivity only applies to New Jersey public utilities which meet those requirements. Finally, the Director contends that since Delmarva is not similarly situated to other taxpayers in New Jersey which are subject to the F & GRT (the other taxpayers, unlike Delmarva, make retail sales of electricity in New Jersey), its constitutional arguments fail.
III.

Taxation of Electric Public Utilities in New Jersey

A.

Applicability of CBT Act and/or F & GRT Act

Significant changes in the taxation of electric public utilities took place effective January 1, 1998. L. 1997, c. 162. These legislative changes were enacted to preserve certain revenues under transition to more competitive markets in energy. Id. The tax periods in question in this ease predate these changes. The 1997 legislation imposed the CBT on all electric public utility companies and ended the imposition of the F & GRT for the years after those under consideration in this case. As of January 1, 1998, all electric public utilities became subject to the CBT. Thus, the determination in this case does not relate to tax years after 1997.
The CBT is imposed on every domestic and foreign corporation, not exempt from taxation, for the privilege of exercising a corpo *197 rate franchise in New Jersey. N.J.S.A. 54:10A-2. Exempt corporations are specifically enumerated in the CBT Act. N.J.S.A. 54:10A-3. While the language of the CBT Act specifically exempts water and sewerage companies from taxation, the exemption for electric companies was established at N.J.S.A. 54:30A-49 and the CBT Act at N.J.S.A. 54:10A-3(f) and further clarified in the regulations. N.J.A.C. 18:7-1.12(a)(3). As a result, an electric company which was exempt from the CBT pursuant to N.J.S.A. 54:10A-3(f) reported and paid F & GRT taxes. N.J.S.A. 54:30A-49. The F & GRT provided a complete scheme and method of taxation of property and gross receipts of certain enumerated utilities, including electric corporations, using or occupying public streets, highways and roads of New Jersey. N.J.S.A. 54:30A-49; N.J.A.C. 18:22-7.1. The legislature originally set out and enacted this complete scheme of taxation of public utilities in L. 1938, a 8. The 1938 law was later superseded by L. 1940, c. 5 which remained in effect and essentially unchanged until 1991 when the tax base for electric companies was changed from gross receipts to units of energy. See, L. 1991, c. 184.
B.

The Franchise and Gross Receipts Tax on Public Utilities

Prior to the 1997 legislation, under the F & GRT Act pursuant to N.J.S.A. 54:30A-50, a taxpayer was defined as:
any Corporation subject to taxation under the provisions of this act. A person or business entity owning or operating a cogeneration facility as defined in subsection (j) of this section shall not be deemed a corporation subject to taxation under this act unless it shall be a public utility as specifically enumerated in sections 1 and G of P.L. 1940, c. 5 (C 54:30A-49 and C. 54:30A-54).
[Ibid. (amended 1997, eff.1998) (emphasis added).]
Under the statute, a “cogenerator” was “a person or business entity which owns or operates a cogeneration facility in the State of New Jersey.” N.J.S.A. 54:30A-50(j) (deleted 1997).[3] A “cogen- *198 eration facility” was defined as a “plant, installation or other structure whose primary purpose is the sequential production of electricity ... used for industrial, commercial, heating or cooling purposes.” Ibid. The Director argues that Delmarva was not a public utility and did not own or operate a cogeneration facility in New Jersey. The Director also argues that Delmarva is attempting to piggyback its status and activities with the New Jersey public utilities which actually own or operate the Salem plant. Delmarva alleges that it was a public utility and that it owned its interest in the Salem cogeneration facility for the purpose of operating as a public utility in New Jersey and elsewhere.
In the instant case it is undisputed that the Salem plant was a cogeneration facility because its primary purpose was the production of electricity and steam used for industrial and commercial heating purposes. Delmarva only owned a 1% interest in the Salem plant; and the statute does not define how much of an ownership interest an entity should have in order to be defined as a taxpayer under the F & GRT Act. See Cedar Glen Lakes Water Co. v. Director, Div. of Taxation, 7 N.J. Tax 233, 239 (Tax 1985) (holding that “an administrative agency may not extend a statute beyond its language to expand its effects, or to include persons not intended by the Legislature”). I conclude that Delmarva’s 1% ownership in the Salem plant was sufficient to make it a taxpayer under the definition of the F & GRT Act, if it had taxable property and activity under that tax.
C.

Delmarva is a Public Utility

Taxation of Delmarva under the F & GRT Act is conditioned upon Delmarva being a public utility. The term “public utility” is defined in N.J.S.A. 48:2-13, which states in relevant part that:
*199 The term “public utility” shall include every . . corporation .. that now or hereafter may own, operate, manage or control within this Stale any ... electricity distribution ... system, plant or equipment for public use, under privileges granted or hereafter to be granted by this State or by any political subdivision thereof.
[N.J.S.A. 48:2 — 13(a) ].
The statutory definition of “public utility” has remained essentially unchanged since the creation of the NJBPUC and its predecessors in 1911. Once an entity is found to fit within this definition, it is subject to the NJBPUC’s regulatory scheme. In In re Petition of South Jersey Gas Co., 116 N.J. 251, 561 A.2d 561 (1989), a chemical company had not applied to the NJBPUC to be classified as a public utility when it entered into certain contracts and presumably had no intention to make such application. Id. at 256-57, 561 A.2d 561. The Appellate Division had rejected the chemical company’s argument that it was exempt from regulation by the NJBPUC because the public had no right to demand service from it. Id. at 257, 561 A.2d 561. Our Supreme Court held that a chemical company which contracted with an industrial user to supply methane-rich gas, combined with the company’s efforts to market its supply of methane-rich fuel, rendered the chemical company a public utility subject to the jurisdiction of the NJBPUC. Id. at 266 -69, 561 A.2d 561.
In the present matter, the Director denied Delmarva’s CBT refund request because Delmarva was unable to provide evidence that it was recognized as a public utility in New Jersey by the NJBPUC, and therefore had not been granted authorization to file its taxes under the F & GRT Act for the tax years 1994-1997. Delmarva argues that it qualified as a public utility because it owned assets in New Jersey that are unique to electric public utilities and held those assets for the purpose of operating its public utility business in New Jersey and elsewhere. Delmarva also argues that whether a corporation is a public utility for tax purposes is not necessarily dependent upon its regulation by NJBPUC. I note that a corporation may be a public utility for utility regulation purposes, but need not be a public utility for F & GRT purposes. Delmarva also argues that the NJBPUC has *200 recognized that Plaintiff was a public utility when it approved Delmarva’s acquisition of its interest in the LDV.
Under the definition of “public utility” found in N.J.S.A. 48:2-13, in order for Delmarva to be a “public utility” it must be a corporation which owns, operates, manages or controls property within New Jersey and it must do so under the privileges granted by the State of New Jersey. Here, it is not disputed that Delmarva is a corporation that owned property, even though it only owned a 1% interest in the property in New Jersey. The statutory language does not require that such property interest ownership must be 100 percent. See, e.g., Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128-29, 527 A.2d 1368 (1987) (a court is directed to look first to statute’s plain language to derive its meaning, absent any specific indication of legislative intent to the contrary). In fact, the statute even allows for the mere management or operation as opposed to ownership of such property to be defined as and to be subject to regulation as a public entity. N.J.S.A. 48:2-13. While the Director is correct that Delmarva did not obtain the necessary permits from the State to operate the Salem plant, the statute does not require Delmarva to do so in order to become subject to the statute. Cf. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964) (stating that an administrative agency may not extend the language of a tax statute to tax persons not intended to be taxed). However small the ownership interest may be, it is still considered ownership. Tp. of Deptford v. Woodbury Terrace Sewerage Corp., 54 N.J. 418, 424, 255 A.2d 737 (1969) (indicating that the Public Utilities Commission had broad interpretive powers.) The NJBPUC recognized Delmarva as a public utility in its approval of Delmarva’s acquisition of an interest in the LDV. Thus, during the years at issue, Delmarva was an owner within the meaning of N.J.S.A. 48:2-13.
The NJBPUC has authority to grant franchises or privileges to any public utility. In In re Petition of South Lakewood Water Co., 61 N.J. 230, 238, 294 A.2d 13 (1972), the Court described a franchise or privilege as follows:
*201 Generally speaking, a franchise is a privilege of a public nature conferred by government on an individual or corporation to do that “which does not belong to the citizens of the country generally by common right.” In the case of public utilities, it means permission to operate a business, peculiarly of a public nature and generally monopolistic.
[Ibid.]
The NJBPUC oversees local utility companies to prevent franchise abuses and ensure that consumers are provided with safe and adequate services at reasonable rates. It has been recognized that within the meaning of N.J.S.A. 48:2-13 the term “privilege” can take various forms. In re Petition of N.J. Natural Gas Co., 109 N.J.Super. 824, 332, 263 A.2d 174 (App.Div.1970), certif. denied, 56 N.J. 475, 267 A.2d 57 (1970). In fact, one utility was held to exercise such a privilege when it was incorporated under the New Jersey Corporation Act, it carried on business for “public use” within the state. Acquackanonk Water Co. v. Board of Public Utility Comm’rs, 97 N.J.L. 366, 370-71,118 A. 535 (Sup.Ct. 1922), affd sub nom., East Jersey Water Co. v. Board of Public Utility Commissioners, 98 N.J.L. 449, 119 A. 679 (E. & A.1923).
In Lewandowski v. Brookwood Musconetcong River Property Owners’ Asso’n, 37 N.J. 433, 181 A.2d 506 (1962), the Supreme Court of New Jersey considered the meaning of the phrase under privileges granted by this State as used in N.J.S.A. 48:2-13, and explained:
N.J S.A. 48:2-13 does not provide that the “privileges” must be franchises in order to make the water supplier subject to the jurisdiction of the Board. The requisite “privileges” may take various forms. East Jersey Water Co. v. Board of Public Utility Commissioners, supra. In that case the water company had no franchise. The court, in holding that the water company came within the jurisdiction of the Board of Public Utility Commissioners, found the statutory “privileges” from the company’s charter granted under the General Corporate Act [of 1875], L. 1876, p. 103 [c. 90], and from the State’s acquiescence in the use of its waters by the company.
[Id. at 514.]
In Lewandowski, supra, the Court found the requisite privileges in (a) the actual presence and continuous use of the water company’s water mains in dedicated public streets, (b) the approved subdivision plans that recognized and approved the laying and maintaining of mains in the streets which thereby granted a privilege without which the water system could not have been *202 operated by the Association, (c) the State’s issuance of various permits and approvals and, (d) its corporate charter which gave the Association the privilege to provide for utility services. Id. at 447-48, 181 A.2d 506. The NJBPUC has authority to grant franchises and privileges to any public utility.
Here the Director contends that an entity which has not been identified or designated by the NJBPUC as a New Jersey public utility can not make that determination for itself. However, I conclude that Delmarva can satisfy the requirement of a privilege granted by New Jersey because it already has an ownership interest in a public utility located in the State, and, as determined in In re Petition of South Jersey Gas, supra, such a privilege can be granted after the franchise begins operation.
The Director’s argument that Delmarva’s property ownership was passive and the type of activities it conducted did not render it a New Jersey public utility are not persuasive. Delmarva owned interests in the Salem unit and the LDV, both of which were employed in public use under privileges granted by the State of New Jersey. Although Delmarva only made wholesale sales of electricity to its customers in New Jersey, those sales were employed for public use as the public was the end user of the electricity. By virtue of its Certificate of Authority, Delmarva was specifically authorized to carry on within New Jersey, activities related to its business which was primarily that of a public utility. It operated a part of its public utility business in New Jersey, owning utility assets which create the majority of Delmarva’s revenue. Its ownership in the LDV was also approved by the NJBPUC. Like the water company in Lewandoiuski, supra, Delmarva had an actual presence in and over New Jersey’s public streets. The conductor wires of the LDV, in which Delmarva had an ownership interest, intersected and extended into and over those streets and highways. The NJBPUC approved the transfer to Delmarva of an ownership interest in these portions of the LDV. In doing so, the NJBPUC necessarily granted to Delmarva all of the privileges incident to that ownership. Thus, I conclude that Delmarva was utilizing its corporate franchise and other privileges to conduct its electric utility business in New Jersey, *203 and therefore was a New Jersey public utility for purposes of its summary judgment motion.
D.

Taxation of Delmarva Under the F&GRT

The design of the F & GRT, as it applies to public utilities, is predicated on property ownership and business activities in New Jersey.
The purpose of this act is to provide a complete scheme and method for the taxation of street railway, traction, sewerage, water, gas and electric light, heat and power corporations using or occupying the public streets, highways, roads or other public places, to exempt from taxation other than imposed by this act the franchises, stock, and certain property of such corporations and for the taxation of the property of such corporations not so exempted from taxation ....
[N.J.S.A. 54:30A-49 (amended 1997, effective Jan. 1,1998) (emphasis added.) ]
The F & GRT provides that taxes be levied on electric power corporations using or occupying public streets, highways, or other public places, and their property and franchises.
Every gas and electric light, heat and power corporation using or occupying the public streets, highways, roads, or other public places in this State shall, annually, pay excise tax for the privilege of exercising its franchises and using the public streets, highways, roads or other public places in this State ...
[N.J.S.A. 54:30A-54.6 (repealed by A. 1997, c. 162 § 77, eff. Jan. 1, 1998).]
Prior to 1992, the excise tax was based on a percentage of gross receipts. N.J.S.A. 54:30A-18. For the tax period in question, the gross receipts tax imposed on electric power corporations was replaced with unit-based taxes, based on therms of gas and kilowatt hours of electricity sold in New Jersey. N.J.S.A. 54:30A-54.6 (enacted as L. 1991, c. 184, § 10, effective January 1, 1992; repealed by L. 1997, c. 162 § 77, effective Jan. 1, 1998). Excluded from taxable therms of gas and kilowatt hours of electricity are units sold or furnished to other public utilities (i.e. wholesale sales, sales for resale, or sales to other than the final consumer), because those utilities are subject to a tax on their retail gross receipts. N.J.S.A. 54:30A-50(k). In this case, Delmarva’s retail sales of electricity generated in part by Delmarva’s property in New Jersey were not subject to the F & GRT because all of its retail sales were made outside of New Jersey.
*204 The Director argues that there are four statutory tests for public utilities which must be met in order for them to be exempt from the CBT. Exempt public utilities must have:
(a) exercised franchises or privileges granted by New Jersey pursuant to N.J.S.A. 54:30A-49, -51, -54;
(b) owned property and stock here pursuant to N.J.S.A. 54:30A-49, -55, -58 (repealed with respect to periods after those covered in this case);
(c) used the public streets, highways and other public places in New Jersey pursuant to N.J.S.A. 54:30A-49, -54; and
(d) made retail sales of energy to New Jersey customers pursuant to N.J.S.A 54:30-1, 54:30A-50(c).
Delmarva contends that N.J.S.A. 54:30-1 and N.J.S.A. 54:30A-50(c) do not specifically state that it must first be classified as a public utility and make retail sales. Delmarva also argues that sales for resale to another public utility are excluded from the imposition of the tax base under the F & GRT, but the exclusion only relates to the computation of the tax base not the classification or identification of the taxpayer under the statute. The statute does not state that a taxpayer must be recognized by the NJBPUC as a New Jersey public utility before it can be subject to F & GRT. Cf. Kingsley, supra, 41 N.J. at 528,197 A.2d 673 (1964). However, I find that Delmarva must make retail sales in New Jersey in order to be subject to the F & GRT, because a taxpayer that does not make retail sales, is not “'subject to tax” under the F & GRT. Therefore, the taxpayer would not be exempt from the CBT.
In order to be exempt from the CBT, a corporation must meet the requirements of N.J.S.A. 54:10A-3(f). Prior to the 1997 amendments, the Corporation Business Tax Act provided, in pertinent part:
The following corporations shall be exempt from the tax imposed by this act:
(a) Corporations subject to a tax assessed upon the basis of gross receipts____
(f) Corporations subject to a tax under the provisions of P.L.1940, c. 4 (C. 54:30A-16 et seq.), P.L.1940, c. 5 (C. 54:30A-49 et seq.), or P.L.1991, c. 184 (C. 54:30A-18.6 et al.) or any statute or law imposing a similar tax or taxes.
[N.J.S.A. 54:10A-3 (amended 1997) (emphasis added).]
*205 E.

Delmarva was not “subject to” the F&GRT

Delmarva is correct in arguing that N.J.S.A. 54:30-1 and N.J.S.A. 54:30A-50(c) do not specifically require that it make retail sales of electricity in New Jersey to be subject to the F & GRT. However, in order to be exempt from the CBT a corporation must have been “subject to tax” based upon its gross receipts. Therefore, in order to determine if a corporation is exempt from the F & GRT I must first determine if the corporation was “subject to tax” under the F & GRT. If the taxpayer owed tax under the F & GRT, it would be exempt from the CBT. Accordingly, the taxpayer would be exempt from the CBT and subject to the F & GRT. However, if the taxpayer is not subject to tax under the F & GRT the outcome is different. In the latter case, the taxpayer is not subject to tax based on its gross receipts. Accordingly, the taxpayer is not exempt from paying the CBT.
Examining the gross receipts tax statute either before or after the 1991 legislative changes, the impact is the same. A taxpayer was liable for a tax based on gross receipts (whether based on gross sales or unit-based sales) minus wholesale receipts (whether based on gross sales or unit-based sales). If all of its gross receipts were wholesale receipts its tax base was zero, and it had no F & GRT liability.
Delmarva admits that during the tax periods in contention, it did not sell, distribute or hold the rights to sell or distribute electricity to retail customers in New Jersey, but instead did make wholesale sales of energy to New Jersey public utilities. Delmarva also admits that wholesale sales to public utilities are excluded from the definition of the tax base under the F & GRT. On the basis of its own admissions, Delmarva was not subject to a tax based on its gross receipts because the F & GRT excludes wholesale sales from the computation of the tax base. Therefore, Delmarva’s taxes calculated under the F & GRT, were zero. If a corporation is not liable for the taxes based upon its gross receipts, the corporation is not exempt from the CBT. Accordingly, because of the way in which Delmarva conducted its business in *206 New Jersey, it was not liable for F & GRT and therefore was not exempt from the CBT.
The analysis comes down to what the term “subject to tax” means. Does it mean required to file a report or does it mean liable for the payment of tax. In another context, this court has held: “Income ‘subject to tax’ under the [the Gross Income Tax] Act, as that term is used in N.J.S.A. 54A:4-1, therefore encompasses (to state it in other words) only income actually taxed by the Act.” Kanarek v. Director, Div. of Taxation, 14 N.J. Tax 589, 597 (Tax 1995).
There is no basis for arguing in the context of this case that “subject to tax” in the tax statutes of New Jersey does not mean “liable for tax.” Since it is clear’ that for the year’s 1994 to 1997 Delmarva was not liable for any New Jersey F & GRT, neither was it “subject to tax” under the F & GRT. It follows logically that it was not exempt from CBT in those years.
I do not hold that N.J.S.A. 54:30-1 or N.J.S.A. 54:30A-50(c) specifically required retail sales in order to be exempt from the CBT. Instead, I hold that the 1994 to 1997 versions of N.J.S.A 54:10A-3(f) required a corporation engaged in a utility business in New Jersey, like plaintiffs, to be liable for F & GRT in order to be exempt from the CBT. Thus, where a corporation classified as a public utility has not made retail sales of energy in New Jersey, it would not be liable for F & GRT. Accordingly, that corporation would not be exempt from taxes under the CBT by virtue of N.J.S.A. 54:10A-3(f).
Since Delmarva cannot meet the Director’s fourth test for exemption from the CBT, there is no reason to discuss the other elements of the test which, in any event, Delmarva argues are unauthorized conditions imposed by the Director. I find that Delmarva is required by law to pay the CBT since it did not make retail sales in New Jersey and therefore had no liability to pay the F & GRT, an excise tax on its gross receipts.
The parties spend time discussing an “unreported” determination of the Ohio Board of Tax Appeals. Carnegie Natural Gas Co. v. Tracy, 1995 Ohio Tax Lexis 1357 (Ohio Bd. Tax App.1995). I *207 find that case and the parties’ discussion of it to be of little help in deciding this case. The structure of the Ohio statutes and wording of the specific exemption from Ohio’s tax analogous to our CBT is different from our statutes. New Jersey will not follow the statutory interpretation of another state’s dissimilar statutes. Nor will it look to that interpretation for guidance when the logic of that analysis is contrary to this court’s analysis of our differently worded statutes. Furthermore, the structure of the taxpayer’s activities in that ease was substantially different from that of Delmarva’s activities in New Jersey.
F.

Reading the CBT and F&GRT Together

Although Delmarva owned property in New Jersey and had receipts from New Jersey sales from 1994 to 1997, it argues that because it was a public utility it was not subject to New Jersey’s CBT. I have found that it was subject to the CBT because, even assuming it is (or was) a public utility, exemption from the CBT is based on Delmarva’s having had to actually pay F & GRT (a tax imposed on public utilities in lieu of all other taxes, i.e. income, property, and gross receipts.) Because of the nature of Delmarva’s business in New Jersey, it was not subject to the F & GRT for the years 1994 to 1997, nor does it show that it paid any tax on its $150 million in property or its wholesale sales of as much as $27 million in New Jersey. Although Delmarva’s reading of separate sections of each of the two statutes under consideration in this case could lead to the conclusion that it is exempt from liability for both taxes, a sensible reading of the two statutes together cannot support that conclusion.
It is well settled that in construing a statute the court is not to be guided by a single sentence or the words of a sentence but must look to the provisions of the whole law, and to its object and policy. In searching for the true undersl anding and proper application of a statute the language must be read perceptively and sensibly with a view toward fulfilling the Legislature’s intent.
[Stephen Little Trucking v. Director, Div. of Taxation, 19 N.J. Tax 461, 465 (Tax 2001) (quoting Cumberland Arms Assocs. v. Burlington Tp., 10 N.J. Tax 255, 268 (Tax 1988) (citations omitted)).]
*208 VII.

Constitutional Issues

A statute must be read in such a way as to find it constitutional, if it is reasonably susceptible to such an interpretation. In re Bd. of Educ., 99 N.J. 523, 539, 494 A.2d 279 (1985)(citing State v. Profaci, 56 N.J. 346, 349-50, 266 A.2d 579 (1970); Woodhouse v. Woodhouse, 17 N.J. 409, 416, 111 A.2d 631 (1955)); City of Newark v. Essex County Bd. of Taxation, 309 N.J.Super. 476, 486, 707 A.2d 493 (App.Div.1998).
A.

Commerce Clause

Complete Auto Transit v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977) established the constitutional limitations imposed on states’ taxation of corporations engaged in interstate commerce. The test has four prongs.
(1) the taxpayer must have substantial nexus (contacts with) the taxing state.
(2) The tax must be fairly apportioned.
(3) The tax must not discriminate against interstate commerce.
(4) The tax payable to the state must be fairly related to the services provided by the state.

[Ibid.]

There is no question that Delmarva has a substantial nexus with New Jersey (the first prong). Table 1 above indicates that the value of Delmarva’s property in New Jersey exceeded $150 million in each of the years under appeal. Although the CBT tax liability imposed on Delmarva by the application of the allocation of income to New Jersey by N.J.S.A. 54:10A-6 (“Section 6”) was in some years substantially more than Delmarva’s New Jersey receipts it was only a fraction of the value of Delmarva’s property in New Jersey on which it paid no property tax and which it used to generate substantial income in other states (second prong). As for the third prong of the test, if the Section 6 allocation was not fair, Delmarva could apply for a modification of that calculation under N.J.S.A. 54:10A-8 (“Section 8”), which provides:
*209 If it shall appear to the commissioner [Director of the Division of Taxation] that an allocation factor determined pursuant to section G does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it by:
(a) excluding one or more of the factors therein;
(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);
(c) excluding one or more assets in computing entire net worth [4]; or
(d) excluding one or more assets in computing an allocation percentage; or
(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.
f Ibid.)
See Hess Realty v. Director, 10 N.J.Tax 63, 81 (Tax 1988); SMZ Carp. v. Director, Div. of Taxation, 193 N.J.Super. 305, 315, 473 A.2d 982 (App.Div.1984); Small & Fishbein, The New Right of a New Jersey Based Corporation to Allocate Income to Other States, 8 J. St. Tax’n 81, 83 (1989).
Delmarva’s constitutional criticism of the application to it of the CBT is based on the alleged discrimination under the third prong of the Complete Auto Transit test — that it discriminates against out-of-state utilities and if imposed in a manner like the manner by which New Jersey has imposed the tax by all 50 states it would not be internally consistent.
There is no question that if the CBT were imposed by New Jersey and all other states on all public utilities and there were no F & GRT imposed on any of these utilities it would pass constitutional challenge. Our CBT has been held to be constitutional in many cases under the so-called internal consistency test. See, e.g., Stryker Corp. v. Director, Div. of Taxation, 168 N.J. 138, 151-54, 773 A.2d 674(2001).
Delmarva argues that because New Jersey exempts utilities which make retail sales in New Jersey from imposition of the CBT, it must exempt utilities which make retail sales anywhere. However, if other states’ interpretation of the two statutes were *210 the same as New Jersey’s, each utility making retail sales in a state would be subject to that state’s F & GRT and each utility not making such sales, but choosing to own property in a state and make only wholesale sales in that state, would be subject to its CBT. The states impose taxes differently because of the way in which the electric utilities choose to conduct their business in each state. There is no question that Delmarva earns income in New Jersey and in other states from the use of its New Jersey assets and the sale of electricity in New Jersey. New Jersey is entitled to a fair share of the state taxes to be paid by Delmarva. By the way in which it conducts its business in New Jersey, it is not subject to any tax liability under the F & GRT. Thus, it is not unconstitutional to impose the CBT on Delmarva. Should the allocation formula under Section 6 work an injustice, there is the safety valve of Section 8 permitting the Director to take into account, among other items, the taxes paid to other states. N.J.S.A. 54:10A-8(e). See n. 1 and 2 to Table 1 (this op. at pages 193-94), indicating that the difference in allocations under various formulas would not seem to rise to constitutional dimensions in this case. The “safety valve” of the CBT’s Section 8 flexible formula allocation provides a remedy that was unavailable in New Jersey’s flat tax (as opposed to this apportioned or allocated tax) held to be unconstitutional in American Trucking Associations v. State, 180 N.J. 377, 414-15, 852 A.2d 142 (2004).
In its brief, Delmarva points out that it could avoid imposition of the CBT by conducting a regulated business in New Jersey, as it does in other states. The tax consequences of its method of doing business in New Jersey must be governed by the way it conducted its business in New Jersey, not the way it might have conducted that business. General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122,136-38, 416 A.2d 37 (1980). In short, the coordination of the CBT and F & GRT in New Jersey, if replicated in all 50 states, would result in the taxation, under a tax similar to the F & GRT, on those utilities making retail sales in a state and a CBT like tax on those utilities active in those states in which they do not make retail sales.
*211 B.

Equal Protection

The constitutionally permissible differentiation between, and the taxation or exemption of, retail sales and non-retail sales is virtually black letter law under the Equal Protection Clause of the Federal Constitution. Lehnhausen v. Lake Shore Auto Parts, Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351, 354-55 (1973) stating that “(the States have large leeway in making classification ... ”). Of course, this decision is applicable to Delmarva and corporations like it that chose to make absolutely no retail sales of electricity in New Jersey. To the extent that the allocation of income subject to tax in New Jersey is unconstitutionally excessive, relief under Section 8 of the CBT is available. The analysis applicable to a corporation which chose and was able to make regulated retail sales of electricity in New Jersey is not addressed by this opinion.
IX.

Conclusion

It is common sense that the Legislature would intend that the provisions of N.J.S.A. 54:10A-3(i) would prevent the taxation of a single corporation under both the F & GRT and the CBT. The legislators could not have contemplated that those words preventing double taxation would result in the complete exemption from both taxes of a corporation active in New Jersey, owning property in New Jersey, and making sales in New Jersey. The design of the interaction of the CBT and the F & GRT undoubtedly failed to give careful consideration to public utilities operating in more than one state. To the extent that it results in double taxation under New Jersey’s CBT, relief is available under that Section of the CBT permitting an apportionment of income under a flexible formula. N.J.S.A. 54:10A-8. It could not have been the Legislature’s intent to relieve out-of-state public utilities active in New Jersey from all New Jersey tax obligations.
*212 In sum, I hold that although Delmarva may be a public utility because of its activities in New Jersey, it was not liable for the F & GRT because it did not have retail sales of electricity in New Jersey during the tax years in question. I also hold that Delmarva is subject to the CBT, and its request for a refund is denied. I find no constitutional infirmity with this interpretation of the Director which finds that a corporation, like Delmarva, doing business in New Jersey is subject to or exempt from a tax based on the nature of its sales in New Jersey. Those with both retail and wholesale sales would have been subject to the F & GRT, but those with only wholesale sales were only subject to the CBT. No challenge has been made to the fair allocation to New Jersey of Delmarva’s income under Section 6 of the CBT. Furthermore, the numbers and case law cited at Table 1 of this opinion do not indicate that any discrepancies between the actual allocations that Delmarva made on its returns and other “fair” allocations calculated in that table rise to constitutional dimensions. An order granting summary judgment to the Director and denying it to Delmarva will be entered.

 The single-factor sales formula has been determined to be a constitutional allocation by the United States Supreme Court. Moorman Mfg. Co. v. Bair, 437 *194 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). Although Delmarva's sales in New Jersey were virtually nil, except in 1997, its CBT as a percentage of the value of its property in New Jersey never exceeded 2.005%, a figure consistent with the general equalized rate of property taxation in New Jersey's municipalities, and Delmarva was not subject to property tax in New Jersey on these assets.

 The CBT allocation factor calculated by Delmarva for 1994, 1995 and 1996 appears to be lower than the allocation under N.J.S.A. 54:10A-6 because Delmarva calculated this percentage as though it had employees and a payroll in New Jersey when in fact it did not. Prior to its amendment by L. 1995, c. 245, N.J.S.A. 54:10A-6 read in part: "[the] allocation factor ... shall be the average of the fractions computed in (A) [the property fraction], (B) [the sales fraction] and (C) [the payroll fraction] below, or of so many of them as may be applicable.” (emphasis added). In each year 1994-1996 Delmarva divided the total of its three factors by three. However, since the payroll factor was zero, it should have divided the total by two, in accordance with the statute. Nevertheless, any divergence of the allocation factor actually calculated by Delmarva or properly calculated under the statute from the other percentages calculated and presented in this table does not appear to be of constitutional dimension. See Moorman Mfg. Co., supra; Trinova Corp. v. Michigan Dep’t of Treasury, 498 U.S. 358, 111 S.Ct. 818, 112 L. Ed.2d 884 (1991).

 The definition of "cogenerator" and "cogeneration facility" were deleted from the statute by L. 1997, c. 162, § 7. Under this change, the definition of "taxpayer" deleted the last sentence which referred to persons or entities owning *198 or operating a cogeneration facility under subsec. (j) of this section. The current version of the statute reads: " 'Taxpayer' means any corporation subject to taxation under the provisions of this act." (emphasis added).

 Up until 1985, the CBT was imposed on both net worth and net income. L. 1982, c. 55 phased out and then removed the net worth portion of the tax base. N.J.S.A. 54:10A-5(a).